Best, &c. v. Robinson, &c. (two cases.)

---

CASE 2.—ACTION OF LIZZIE BEST, &C., AGAINST J. S. ROBINSON, &C., AND WILLIAM H. BEST, &C., AGAINST SAME DEFENDANTS, INVOLVING LIABILITY OF A COUNTY JUDGE AND SURETIES ON HIS OFFICIAL BOND FOR FAILING TO TAKE SUFFICIENT SURETY ON GUARDIAN'S BOND. TWO CASES HEARD TOGETHER. OCT. 21.

# Best, &c. v. Robinson, &c. (two cases.)

APPEAL FROM GARRARD CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. REVERSED.

COUNTY JUDGES—LIABILITY FOR FAILING TO TAKE SUFFICIENT SURETY ON GUARDIAN'S BOND.

1. Kentucky Statutes, sec. 2017, requires a guardian to execute a bond before acting; and section 2018 provides that if the court fails to take such covenant, or accepts such sureties as

do not satisfy it of their sufficiency, the judge so in default and his sureties shall be liable to the ward for any damages he may sustain thereby. *Held* that, though the judge is only re-- quired to use reasonable care to ascertain that the sureties are sufficient, he is absolutely bound to know that surety of some kind to the covenant is actually taken, and, if he accepts a bond to which the signature of the surety has been affixed under a power of attorney not legally authenticated, he is liable for resulting damages.

WILLIAM HERNDON, ATTORNEY FOR APPELLANTS.

These two actions were brought by appellants, by their guard- ians, against J. S. Robinson, the former county judge of Gar- rard county, on his official bond for money misappropriated by one Galloway, former guardian for appellants, who was allowed by the county judge to qualify and take possession of the wards' money without executing a proper bond therefor.

Galloway, the former guardian, pretended to have a power of attorney from his father, authorizing him to sign his father's name to his bond as guardian, which the county judge accepted. After the death of the guardian, J. G. Galloway, suit was brought against Frank Galloway, the surety on said bond, for the money owing to the wards, to which the surety filed a plea of *non est factum* to the bond, which was sustained by the court and the action dismissed as to the surety. Judgment was obtained against the administrator of J. G. Galloway, former guardian, and execution issued thereon, which was returned "no prop- erty found," and these suits were brought on the bond of the county judge, alleging that the loss of this money was due to the want of care in said officer in taking said bond.

Our contention is that the lower court by its instructions virtually took the case from the jury, and we insist that the jury should have been permitted to say by their verdict whether or not Frank Galloway executed or did not execute the power of attorney, and should not have been authorized by the in- structions to find for the appellee upon his mere belief upon inquiry or upon great vigilance that Frank Galloway had exe- cuted it. It is the duty of the county judge to know that he has taken a bond and that the person who signs it is the person he represents himself to be, and that the signature to a bond or a power of attorney is not a forgery. The instructions per- mitted the jury to find for appellee, even if the power of at- torney was a forgery, if the judge believed it was genuine. We claim that this was error.

Best, &c. v. Robinson, &c. (two cases.)

## AUTHORITIES.

Kentucky Statutes, secs. 2018 and 2017; Com. for &c. v. Netherlands, 87 Ky., 195.

J. E. ROBINSON & ROBERT HARDING FOR APPELLEES.

It is proven in these cases by the judge and clerk of the county court, that the clerk prepared the power of attorney in the usual form, authorizing J. S. Galloway to sign Frank Galloway's name to the bond as surety. This power of attorney was taken away by the guardian and brought back to the judge duly executed by the surety, Frank Galloway, before an officer with his seal of office affixed. By virtue of this power, J. G. Galloway signed Frank Galloway's name to the bond. This paper was put in the record book but disappeared from the clerk's office and was lost.

We claim that the instructions given by the lower court were right.

The first one directs the jury to find for Robinson, if they believe that Frank Galloway executed and delivered the power of attorney to his son.

The second one allowed the jury to find for appellee, even if the power of attorney was a forgery, provided it was duly executed and that appellee believed in good faith it was genuine and exercised reasonable care and prudence to ascertain its genuineness before accepting it.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

These two cases, involving identically the same questions, will be disposed of together. Appellants are infants. In September, 1893, J. G. Galloway was appointed their guardian, and qualified in the Garrard county court. He died insolvent, owing his wards a balance. Suit was filed upon his bond as guardian against the surety in the bond, Frank Galloway, who was his father. The surety's name had been placed to the bond under a power of attorney, and he pleaded that it was not his act or deed. The case was tried, and, on final hearing, judgment was given in favor of the surety on this plea. The wards then filed these actions against the county judge and his sureties on his official bond to recover for his failure to take the

proper bond of their guardian. He controverted the allegations of the petition, and on final hearing a verdict was rendered in his favor, on which judgment was entered. On the trial, Frank Galloway testified that he did not sign the power of attorney, or know anything about it until after the death of his son J. G. Galloway. The county judge testified that J. G. Galloway first came and offered to sign his father's name to the bond; that he refused to accept it, and told Galloway either to bring his father, or a power of attorney, duly executed, authorizing him to sign his father's name, instructing him to have his father go before some officer of the law and execute a power of attorney; that Galloway came back soon afterwards with a power of attorney, in regular form, executed before a magistrate or a clerk or deputy clerk, attested by the officer, with his seal of office on it; that it was signed by Frank Galloway making his mark, and attested by an officer, with his seal attached. J. G. Galloway executed the bond and signed his father's name as surety by himself, as attorney in fact, under the power of attorney. He also stated that a few months afterwards Frank Galloway came to his office and thanked him for permitting him to send the power of attorney, as it saved him a long ride. On cross-examination he admitted giving the following testimony in the suit on the guardian's bond, when the surety pleaded *non est factum*: "Ques. Did you take the paper out of Mr. Wherritt's hand, or did he give it to you? Ans. He read it to me. Ques. Then, if I understand you, you did not read the power of attorney yourself at all? Ans. I did not take it out of Mr. Wherritt's hand. Ques. How was that power of attorney signed? Ans. As I stated, I don't remember; my impression, my recollection, is it was executed before an officer at Kirks-

ville, probably a magistrate. Ques. Had Frank Galloway signed that paper himself? Ans. I can't say. It was witnessed by some one, and, my impression, before an officer. Ques. Now, you are positive it was before an officer? Ans. My recollection is it was taken before an officer. I told you that I did not have it in my hands; it was read to me. Ques. If you did not see the paper, how do you arrive at the conclusion that it was signed and witnessed? Ans. From the reading of the clerk. I saw the power of attorney in Wherritt's hands as he read it. I saw the seal of the officer on it. My recollection is that Mr. Wherritt brought Frank Galloway to my office when he made me the visit, thanking me for not requiring him to come in person to sign the bond. Ques. What was Mr. Frank Galloway's business in your office the time which you speak of? Ans. He had no business except what I stated. He did not tell me of anything else." The clerk, Wherritt, was also introduced, and stated as follows: "My name is Thom. Wherritt, and I was clerk of the Garrard county court from 1882 up to January 1, 1895. I was clerk of said court when the guardian bond of J. G. Galloway as guardian of Lizzie and William Humphrey Best was executed. Mr. J. G. Galloway came down and wanted to sign his father's name as surety, and the judge required a power of attorney of him, authorizing him to do so. I either prepared the power of attorney, or told him how it should be prepared. I do not remember how it read or how it was signed. It was in the usual and regular form. Mr. Galloway came in my office with it, and executed the bond, and signed his father's name as surety. The power of attorney was placed in the bond book by me, and I have never looked for or seen it since, that I remember of. I don't remember whether it was pasted in the

book, or placed in loose. They were generally pasted in.
. . . Either just before I retired from office, or just
after, a gentleman was introduced to me in the clerk''s
office as Frank Galloway. I never saw him before, and
have never seen him since. It was shortly after the bond
was executed, and I think he wanted to go to see Judge
Robinson, and I took him to the judge's office." The pow-
er of attorney was lost, and could not be produced on
the trial. There was also evidence conducing to show
that Frank Galloway did not leave home or go to Lan-
caster within a number of years after the bond was ex-
ecuted, that he lived in Madison county, and that his son
J. G. Galloway had never spoken to him about going on
the bond. On these facts the court instructed the jury
as follows: "Gentlemen of the jury: It appears that
the name of Frank Galloway was signed in the guardian
bond by J. G. Galloway. In order to bind Frank Gallo-
way, it was necessary that he should have given to J. G.
Galloway written authority to sign his name as surety to
the bond, and this written authority must have
been signed by Frank Galloway by writing his own
name, or, if he did not sign his own name, by
making his mark or sign, in the presence of at least one
credible attesting witness. Now, if you believe from the
evidence that J. G. Galloway did not have such written
authority from Frank Galloway, but notwithstanding this
fact the defendant J. S. Robinson failed to exercise a rea-
sonable care and diligence to inform himself of this fact,
and accepted the bond, and that by reason of this fact any
personal estate or money which came to the hands of J.
G. Galloway as guardian was lost to plaintiff, Lizzie Best,
then you will find for plaintiff in damages, the criterion of
which is the estate which is lost. Your verdict, if it be

for plaintiff, can not exceed $495.10, the amount claimed in the petition. No. 2. If you believe from the evidence that defendant, in accepting the bond, exercised that degree of care and prudence which a reasonably prudent business man would have exercised in providing surety for his own debt or property, then you will find for defendant."

Section 2017, Kentucky Statutes, requires a guardian to execute bond before acting. Section 2018 then provides· "If the court fails to take such covenant or accept such person or persons as surety as do not satisfy it of their sufficiency, the judge so in default and his sureties shall be jointly and severally liable to the ward for any damages he may sustain thereby." It will be observed that the judge and his sureties are made liable to the ward for any damages he may sustain, "if the court fails to take such covenant." In Daniels v. Vertrees, 69 Ky., 4, the name of one of the wards was omitted from the bond and so no bond was taken to this ward, as the surety was not bound beyond the undertaking of his covenant. The county judge and his sureties were held liable, notwithstanding the order of the court by which the guardian was appointed recited that a bond was executed. In Com. v. Netherland's Adm'r, 87 Ky., 195 (10 R., 123) (8 S. W., 272), the county judge allowed the name of the surety to be signed to the bond by the principal upon his statement that he had the verbal authority of the surety to sign his name to it. The court, after pointing out that the second clause of section 2018, relating to the solvency of the surety only, required the county judge to use reasonable diligence in ascertaining whether the surety was sufficient, said: But the first clause made the judge liable to the ward if he failed to take the covenant, with surety, from

the guardian. The simple failure to take surety was made sufficient to hold the judge liable for any damage that the ward might sustain by reason of such failure. Under the second clause he could be heard to excuse himself for taking insufficient sureties, upon the ground that he, after exercising reasonable diligence, satisfied himself that the sureties were sufficient, because it would be unreasonable to require him to ascertain the fact as to the sufficiency of the sureties with absolute certainty. Hence said clause required him to exercise reasonable diligence only. But requiring him to know that surety to the covenant was actually taken was, not unreasonable, for the reason that he could do so with absolute certainty; for he could require the surety to sign the covenant in person and in his presence, or he could require the surety to authorize the signing of his name by a written power of attorney, authenticated in such a manner as to leave no doubt of its authenticity. This could be done without any material inconvenience to the guardian, surety or judge. Hence the first clause required that the judge should know that surety was taken, and for a failure to take such surety he was made liable to the ward for any damage that he sustained thereby." The statute has been re-enacted by the Legislature since this construction was placed upon it, and we do not think it ought now to be departed from. When a bond is taken under a forged power of attorney, it is void. Though there is an appearance of a bond, there is in fact no bond taken. with surety, as required by the statute. It being the absolute duty of the county judge to take the bond with surety, he can not be excused from liability, as the jury were told by the instructions above quoted, if he exercised that degree of care and prudence which a reasonably prudent business

man would have exercised in providing surety for his own debt or property. He must either require the surety to sign the bond in person and in his presence, or he must require the surety to authorize the signing of his name by a written power of attorney, authenticated in the manner allowed by law. County clerks and notaries public are authorized to take the acknowledgments of persons to such instruments, but unless the power of attorney was authenticated by some officer authorized to take acknowledgments to deeds, or its due execution was proven under oath by the subscribing witnesses, or one of them, as provided by law, the paper was not legally authenticated, and the county judge acted upon it at his peril. The statute is a wise one, and must not be frittered away by construction. Infants are unable to protect themselves, and are at the mercy of their guardians where no bond is taken. County judges and their sureties are therefore made responsible to the ward in this contingency.

Judgment in each case reversed, and cause remanded for a new trial.

Petition by appellant for extension of opinion overruled.