## Johnson v. Little.

(Decided June 22, 1917.)

### Appeal from Pike Circuit Court.

1. Elections—Contest—Supersedeas Bond—Mistake—How Corrected. —In an election contest if the losing party, before the expiration of thirty days from the rendition of the judgment, executes a supersedeas bond before the clerk of the trial court, but makes the other party to the suit obligee therein instead of the clerk of the court, as provided by subsection 12 of section 1596a, Kentucky Statutes, the error may be corrected by the execution of a subsequent bond within the thirty days, payable to the clerk, and if the subsequent bond as executed is filed with the transcript within the time allowed, it will not be quashed on motion for that purpose, nor will the appeal be dismissed.

2. Elections—Contest—Pleading.—In an election contest where certain named voters are contested, but the facts showing their disqualification are inadvertently omitted, an amendment alleging such disqualifying facts may be filed after the time appointed by law for the filing of contest or counter-contest pleadings, as the amendatory facts do not set up additional grounds of contest but render certain and complete those originally relied upon.

3. Elections—Contest.—It is the disposition of courts to uphold elections as far as possible if it can be fairly and reasonably ascertained from the entire record which side received a major-

ity of the legal votes cast, but if because of fraud, intimidation,
violence, bribery or other irregularity it can not be reasonably
ascertained which person or proposition fairly received a ma-
jority of the legal votes cast, it is the duty of the court to ad-
judge the election void.

J. J. MOORE and W. W. REYNOLDS for appellant.

CLINE & STEELE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The voters of sub-school district number 91, in Pike
county, on the afternoon of the 7th day of October,
1916 (the time appointed by law) attempted to hold an
election for the purpose of electing a trustee for that
district.

The appellant (defendant) was the incumbent, and
was a candidate to succeed himself, while those oppos-
ing his election put forward the appellee (plaintiff) as
his opponent. Both candidates claim to have received
a majority of the legal votes cast, and each of them
claimed to be elected, but the county school superintend-
ent declined to recognize the election of either, where-
upon defendant procured a notary public to administer
to him the oath and claim the right to discharge the du-
ties of the office. Plaintiff then filed this contest suit
against him alleging that while defendant claimed to have
received, as his set of officers certified, 25 legal votes at
the election, that 12 of them were illegal because of hav-
ing been cast by persons disqualified under the law to
participate in such elections.

It is also alleged that while defendant counted 27
votes as having been cast at the opening of the election
for his set of officers only 15 of such votes were legal,
the others being some of them non-residents of the dis-
trict, others under the age of twenty-one, and still others
females who could neither read nor write; that plain-
tiff's set of officers received 23 legal votes, which was
the same number which he received in the election, and
deducting all illegal votes from those cast for defend-
ant's set of officers, plaintiff received a majority of at
least eight votes, and was, therefore, entitled to the
office.

The answer put in issue all the allegations of the
petition, and by way of counter-contest alleged that
plaintiff and his set of officers received one vote from

a person under twenty-one years of age and eight votes cast by persons who could neither read nor write, but it was not alleged in the original answer that the latter eight questioned votes were cast by females. This fact necessary to disqualify them was afterwards alleged in an amended answer, but after the proof had been taken, and beyond the time fixed by law for the filing of an answer in the nature of a counter-contest.

After extensive preparation and submission, the trial court adjudged that: "It is impossible to arrive at or determine who was the choice of the legal voters for school trustee in said district aforesaid, and, therefore, adjudges that no election was held in said district, and adjudges that said election be set aside." To reverse that judgment the defendant prosecutes this appeal.

Two preliminary questions are presented for our determination before considering the merits of the case, they being: (1) a motion made by appellee to discharge the supersedeas bond executed by appellant and to dismiss the appeal because the bond was not executed in the manner provided by sub-section 12 of section 1596a of the Kentucky Statutes; and (2) error of the court in permitting the amended answer to be filed showing that the disqualified voters of which defendant complains, who could neither read nor write, were females, and which was filed more than twenty days after the service of the summons upon him.

Disposing of these in the order named, the sub-section of the statute, *supra,* provides that, "Either party may appeal from the judgment of the circuit court to the Court of Appeals by giving bond to the clerk of the circuit court, with good surety, conditioned for the payment of all costs and damages the other party may sustain by reason of the appeal and by filing the record in the clerk's office of the Court of Appeals, within thirty days after final judgment in the circuit court."

The judgment appealed from was rendered on the 18th day of April, 1917, and on April 28 following the transcript was filed with the clerk of this court. On April 19, one day after the rendition of the judgment, a regular supersedeas bond was executed before the clerk of the Pike circuit court, but the obligee therein is the appellee here, whilst the statute, *supra,* requires the bond to be executed to the clerk of the circuit court. After the discovery of the mistake, and on the same day that the

record was filed in this court, another bond was executed in the court below in which the clerk of the court is named as the obligee, and this latter bond in all other respects conformed to the law and was filed in this court on the same day that the transcript was filed. It will be observed that even if it could be said that the first bond was void because of its failure to fully comply with the terms of the statute, the last one, which did fully comply with its terms, was filed within the thirty days allowed by law and at the same time the transcript was filed, and there exist no tenable grounds upon which to sustain the motion, and it is therefore overruled.

In support of the (2) contention, it is insisted that the filing of the amended answer violated the rule as laid down in the cases of Anderson v. Likens, 104 Ky. 700; Clark v. Robinson, 159 Ky. 25; Francis v. Sturgell, 163 Ky. 669, and other like cases, which forbid the filing of amendments setting up new grounds of contest or counter-contest after the time provided by the statute for the filing of such pleadings. If the matter set up in the amended answer complained of here were an additional ground of counter-contest, it having been filed more than twenty days after the service of the summons, the doctrine of those cases would apply, but the fault in the contention is that the amendment contained no additional ground of counter-contest, but only perfected a ground which had been alleged in time, but defectively. In the original answer the persons whose votes were questioned were named, but by inadvertence of the pleader the fact which rendered those votes illegal (they being females) was omitted. The amendment did not seek to incorporate therein, or to question, other votes besides those mentioned in the original answer, and therefore contained no additional ground in support of defendant's contention.

In the case of Wilson v. Hines, which is an election contest case, a similar question was before this court, and in permitting an amendment to be filed after the time provided by the statute there under consideration, and under circumstances similar to those presented here, the court said: "Under this statute a contestant is not allowed to set up, by way of amendment, an entire new ground of contest, in addition to those stated in his notice, but he is not to be precluded from amending and making more specific and definite any ground that is embraced in the notice. This may be allowed, and in fact may be required to be done in the Civil Code (section

134) which applies to proceedings of this kind, as well as to regular actions."

The case of Clark v. Robinson, 159 Ky. 25, is also an election contest case. While it was being tried the plaintiff offered to amend his petition containing matter similar to that of the answer here involved by alleging facts showing that some of the votes he was contesting were illegally cast, and which facts rendering them illegal he had omitted to incorporate in his petition. The court permitted the amendment to be filed, which was complained of on appeal, but in disposing of the objection, we said:

"It will be noticed that this amendment does not bring in the names of any other voters, or make any charge of additional irregularities. It merely undertakes to do what it purports, that is, to perfect and make more definite and specific the grounds set up in the original petition," and the court then refers to the case of Wilson v. Hines, *supra*. These authorities fully sustain the action of the court in permitting the amendment complained of to be filed.

This brings us to a consideration of the merits of the case, which we will dispose of as briefly as possible.

Promptly at one o'clock p. m. on the day of election, the defendant assembled the gathered voters in the school house, and as presiding officer opened up the meeting. He nominated himself as a candidate, and also the names of three persons to be elected as officers to hold the election. Two of those persons were his sons, and the other a close, intimate friend. Those opposed to his election placed in nomination for officers three other persons, whereupon, at the suggestion of the defendant, the crowd divided and defendant nominated and elected himself teller to count his votes, while another performed that duty for the plaintiff. Defendant reported that there were 27 votes cast for his election officers, and only 23 cast for those of his opponent, and thereupon declared his officers elected. They proceeded to hold an election in the school house, while those who favored the election of plaintiff, insisting that the election of officers was unfair and illegal, repaired to the school house yard, and under the refreshing shade of a large oak tree proceeded to hold their election. Each party at his own election received the votes heretofore indicated, and each set of officers certified the election of their man. A large number of witnesses testified that after plaintiff's officers,

as he claims, had been elected, and before any votes were cast, he said to them, "You are the officers of this election, make your own laws to suit yourselves," and further that when the teller for plaintiff, who had counted the votes on the selection of officers, protested that illegal votes had been cast for those officers selected by plaintiff the latter replied, "You are not the judge of this election," and declined to permit a recount. It is true that plaintiff denies the statements attributed to him, but the overwhelming weight of the testimony supports the truth of the charges.

It is admitted that at least three of the persons who stood up to vote for defendant's election officers were disqualified to participate in the election from one cause or another, and the testimony is exceedingly conflicting and confusing as to some of the other questioned ones. Defendant says of the latter, that he refused to count some of them, while other witnesses say that he did count them. As to whether he did or not is so enveloped in doubt as to be practically impossible of determination.

In addition to the actions and conduct of defendant, to which we have referred, it is shown that he is the agent of some corporation having in charge a large tract of land located in the district, upon which a number of voters reside, and that at his first election, if not in the last, he used his position as agent to intimidate voters and to cause them to support him when they perhaps would not otherwise have done so.

It is further shown that during the taking of depositions in this case he and his son, in the dead hours of the night, were endeavoring to induce witnesses for whom the officers had subpoenaes to evade the service by getting out of the county, and in at least one instance did persuade a voter to go into the adjoining county of Floyd.

If the officers favoring the election of defendant, and who conducted their election in the school house, were not legally selected, that election is void. As to whether they were so selected it is impossible to tell from this record, but the facts which we have recited showing the questionable participation of defendant in that election stand out boldly and prominently. If the facts are that the 27 votes cast for the officers who held the election in the school house, at which defendant was elected, were legal votes, the election held in the school house yard was void because the officers who held it received a less number of votes. The same remarks might be made with sub-

stantially the same application concerning the votes cast in each election, but this, as we have said, is enveloped in as much uncertainty and confusion as is the question of the selection of the election officers. Under these conditions, we think the court properly determined that it was impossible to tell who received a majority of the legal votes and who was legally elected.

A part of sub-section 12 or section 1596a of the Kentucky Statutes is: "In case it shall appear from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court, subject to revision by appeal, or the Court of Appeals finally, may adjudge that there has been no election. In such event the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify."

Many cass have been before this court involving the application of that statute. Stewart v. Rose, 24 Ky. Law Rep. 1759; Wilkins v. Duffy, 114 Ky. 11; Orr v. Kevil, 124 Ky. 720; Scholl v. Bell, 125 Ky. 750; Ford v. Hopkins, 141 Ky. 181; Harrison v. Stroud, 33 Ky. Law Rep. 653, and Allen v. Griffith, 160 Ky. 528. Each of those cases presented facts which rendered it impossible to determine who received a majority of the legal votes cast, and it was declared that no election was held.

It is insisted, however, by counsel for appellant that the statute permits such judgment only for fraud, intimidation, bribery or violence practiced in the conduct of the election, and that there is no evidence of either having been practiced by plaintiff in this case. We do not so interpret the testimony. The advice which he gave to his election officers, the activity manifested by himself and son to suppress testimony, his actions and conduct on the day of election in choosing his sons as officers of the election, and other activities, all exhibit not only a disposition to practice fraud, but to intimidate voters, and there is testimony in the record that some of them were actually intimidated. But, be this as it may, an election may be declared void upon other grounds than those mentioned in the statute. In the Hopkins case, *supra*, it is said:

"It is true the courts are disposed as far as possible to uphold popular elections and not to set them aside for light and trivial causes, if it can be fairly ascertained

that the fraud or *irregularities,* occurring did not affect the result. In other words, if it can be ascertained with reasonable clearness that a majority of the legal votes cast have been cast for the apparently prevailing party, the election will not be disturbed for mere irregularities or sporadic frauds which do not affect the result. But in this case no fair and impartial mind, after reading the record, can say with any reasonable certainty which side received a majority of the legal votes cast. . . . The object of the statute is to enable the courts to deprive the guilty of the fruits of victory, where it cannot be said from the evidence which side received a majority of the legal votes cast.''

The grounds for the opinion in the Griffith case, *supra,* wherein the election there involved was adjudged to be void, was for fraud, illegality and *irregularities* to such an extent that the court could not tell with reasonable certainty which party to the contest was elected. From these cases we gather the rule to be that while it is the disposition of the courts to uphold the validity of elections, where it can reasonably do so, yet if the record presents a state of case preventing the court from arriving at a reasonably accurate conclusion it will declare that no election had been held, which we think is an eminently proper rule. We are therefore of the opinion that in either view which might be adopted the judgment of the trial court was correct.

In closing this opinion we cannot refrain from expressing our regret that the beneficent provisions of our public school laws, so generously provided by our legislature, should be frustrated and weakened by such petty political contests as we find manifested by this record. That the opportunities to obtain an education furnished by the law to the children of the state should be hampered and impaired by such strifes and contests is a matter of great public concern. The office of school trustee is one practically without compensation, as the entire emoluments consist in a small per cent. for taking the school census of the district once per annum, and clearly such strifes for the position as the one we see in this case cannot be prompted by a desire to obtain the meager compensation attached to it, thus making the conclusion inevitable that some ulterior purpose furnishes the incentive. We know of no position where the wise saying that ''the office should seek the man'' is more applicable than to that of school trustee, and, according to our view, such

active participation and questionable methods as this record shows is almost a sure indication of the unfitness of the aspirant, and it would be a safe course for each community to pursue if the people condemn the practice by defeating those who employ such methods, for, as stated, it cannot be that they have the interest of the children of the district at heart. But these remarks in their entirety are intended to apply to the candidate only, as it is the duty of the patrons of the schools to elect their best citizens trustees, and to use all honorable and fair means to accomplish that result.

Wherefore, the judgment is affirmed.