## Heitzman v. Voiers.

(Decided October 1, 1913).

### Appeal from Oldham Circuit Court.

1. Elections—Primary Elections—Object of—Eligibility to Vote.—The object of holding a primary election by a political party is to select party candidates, and no voter is eligible to vote at a primary election of a political party, unless he is a member of such party.

2. Elections—Primary Elections—Registration—Conclusive of Right to Vote.—Under Section 19 of the Primary Election Law of 1912, in precincts where registration is required, registration of the voter by which he declares his political affiliation is conclusive of his right to vote, as registered.

3. Elections—Primary Elections—Party Affiliation—Where There is No Registration.—In precincts where there is no registration of voters, electors are by Section 19 of the Primary Election Law of 1912, allowed to vote only the ballot of that party with which they declare their affiliation.

4. Elections—Primary Elections—Party Affiliation.—For an elector to declare his party affiliation he must, in some way, make plain which party he espouses and allies himself with.

5. Elections—Primary Elections—Party Affiliation—When One Not Qualified to Vote in Democratic Primary.—Where a voter, 37 years old, had voted indiscriminately for Republicans and Democrats in general elections for twelve years, and had voted in Democratic primaries for the same period; had voted for a Democratic nominee for Governor in 1911, and for a Republican nominee for President in 1912, he was not affiliated with the Democratic party, and was not qualified to vote in a Democratic primary to select Democratic candidates, in 1913. .

6. Elections—Primary Elections—Party Affiliation—When One Qualified to Vote in Democratic Primary.—Where an elector had not voted for eight years, but had voted the Republican ticket when he last voted, and had shortly thereafter made up his mind in good faith, to thereafter vote the Democratic ticket, and to change his politics and affiliate with the Democratic party, and had voted during said eight years in the Democratic primaries, although he had not voted at all in a general election, such voter was affiliated with the Democratic party, and was qualified to vote in a Democratic primary in 1913.

7. Elections—Contest Under—One Not Required to Tell For Whom He Voted.—In contests arising under a general election under the Constitution, a voter will not be required to tell for whom he voted, if he objects that his testimony might incriminate him.

8. Elections—Primary Elections—Privilege Against Incrimination.— Where a voter merely asked the judge if he would be required to answer a question asking him for whom he had voted in a primary election, he sufficiently raised the question of his privilege against incrimination.

9. Elections—Primary Elections—Party Affiliation—Not An Offense for Qualified Elector to Vote With Party With Which He Is Not Affiliated.—Neither the general election law nor the Primary Election Law of 1912 makes it an offense for a qualified elector to vote in the primary election of a party with which he is not affiliated.

10. Elections—Primary Elections—When One Commits No Offense in Voting with Party with Which He Is Not Affiliated.—Where an elector having the necessary qualifications of sex; age and residence prescribed by Section 1439 of the Kentucky Statutes, which fixes the qualifications of voters, votes in the primary election of a political party with which he is not affiliated, he commits no offense, and is not privileged from being required to tell for whom he voted upon the ground that his testimony might incriminate him.

11. Elections—Primary Elections—Tie Vote—Contest—How Determined.—Under Section 36 of the primary law of 1912, which provides that primary elections under that act shall be conducted substantially as now provided by law in case of regular elections and that any omission in said primary act of 1912 shall be supplied as nearly as practicable from the statutes governing the November

elections, the Court of Appeals will, in case the contest results in a tie vote between candidates, direct them, under sub-section 11 of Section 1596a of the Kentucky Statutes, to appear, either in person or by a properly accredited representative, before the clerk of this court who will then and there determine, by lot, which of the two shall be declared the nominee.

EDWARDS, OGDEN & PEAK and ROBERT T. CROWE for appellant.

J. BALLARD CLARK and A. T. LADD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Appellant and appellee were rival candidates for the Democratic nomination for assessor of Oldham County in the primary election held on August 2, 1913. Upon a canvass of the returns the Election Commissioners certified that Heitzman had received 355 votes, and Voiers 353 votes; and the certificate of nomination having been awarded to Heitzman by the commissioners, Voiers instituted this contest, under the Act of 1912. Voiers rested his contest upon the error of the election officers of the Covington precinct in returning 11 votes for Heitzman when, in reality, he had received only 2 votes in that precinct; whereupon Heitzman answered with a counter-contest claiming that 7 Republicans, and one Prohibitionist, naming them, had voted for Voiers. The case was elaborately prepared, and upon the trial the chancellor found as a fact, which had not been seriously contested, that Heitzman had received only two votes in the Covington precinct, and that in making up the return the officers had, by mistake, given Heitzman 11 votes when the tally sheet showed he had received only 2 votes. The ballots were counted; and this with other evidence established the mistake beyond question. By deducting the 9 votes from Heitzman's 355 votes as shown by the canvass of the Election Commissioners, the chancellor reduced Heitzman's total vote to 346.

The chancellor also concluded that five of the alleged Republicans and the Prohibitionist that had voted for Voiers were not entitled to vote in the Democratic primary, but that two of the alleged Republicans—Charles Wheeler and E. M. Vest—were entitled to so vote; and by subtracting these six illegal votes from Voiers' total of 353, he was given a net total of 347 or a majority of one over Heitzman. From a judgment so declaring Voiers the nominee, Heitzman prosecutes this appeal, relying

solely upon the chancellor's finding that Wheeler and Vest were entitled to vote, for a reversal. As there is no cross appeal questioning the correctness of the ruling of the chancellor in rejecting the other five alleged Republican votes and the Prohibitionist, that ruling is not before us for review. We have, therefore, to examine only the right of Wheeler and Vest to vote.

Section 19 of the Primary Election Law prescribes the qualifications of electors in the primary, as follows:

"In addition to the special qualifications hereinafter prescribed, the same qualifications of electors shall apply in primary elections held under this act, as are now required in regular elections. Said qualifications shall be determined as of the date of the primary, without regard to the qualifications or disqualifications as they may exist at the succeeding regular election. In precincts where registration is required, no elector, except those entitled to be specially registered as hereinafter provided, shall be entitled to vote in any primary unless he is registered in the registration book of said precinct for the preceding year, as affiliating with the party whose ballot he offers to vote. If so registered he shall be entitled to vote the ballot of the party with which he is registered, and no other. In other precincts qualified electors shall be allowed to vote only the ballot of that party with which they declare their affiliation." Acts 1912, p. 59.

There was no registration in this precinct. In examining this question we must bear in bind that in Hager v. Robinson, 154 Ky., 507, we called attention to the fact that the act necessarily manifests little concern in the independent voter because of his resentment of party restraint and disavowal of party allegiance. And since the determination of the right of Wheeler and Vest depends, in this case, almost entirely, if not wholly, upon the testimony of the two men, we will give it in full.

The testimony of Charles Wheeler is as follows:

"1. You are a son of Lucian Wheeler who just preceded you on the witness stand? A. Yes, sir.

"2. You live in the Covington precinct, in Oldham County? A. Yes, sir.

"3. Did you vote in the primary that was held on August the second, of this year, in that precinct? A. Yes, I have been voting in the Democratic primary for twelve years.

"4. With what political party are you connected or affiliated? A. I don't exactly understand.

"5. Are you a Democrat or Republican? A. I have been voting with the Democrats in the primary.

"6. With whom have you been voting in the general elections? A. Republicans and Democrats both.

"7. At the last general election, in 1912 when Mr. Wilson was candidate for President and Mr. Roosevelt and Mr. Taft also, did you support the Democratic nominee in that election?

"Objected to by counsel for the contestant, objection overruled, to which ruling of the court the contestant by counsel excepted.

"By the witness: Must I answer that question, Judge?

"By the court: Yes, you must tell who you were for.

"A. I voted the Republican ticket.

"8. For whom did you vote, for the office of assessor, in this primary? A. I voted for Mr. Voiers.

### CROSS-EXAMINATION.

"1. Did you some times vote the Democratic ticket, in general elections? A. Yes, sir.

"2. Would you say that you are a Democrat; you have voted the Democratic ticket as often as you have voted the Republican ticket, in general elections? A. I don't know about that.

"3. When you asked for a Democratic ballot, in the last primary, did you mean to declare your affiliation with the Democratic ticket? A. I went in and called for a ticket and they gave it to me.

"4. Did you mean to declare yourself a Democrat at that time? A. Yes, sir.

### RE-DIRECT EXAMINATION.

"1. Did you ever vote for a Democratic President? A. Yes, sir.

"2. When? A. It has been—I have forgotten who was running when I voted.

"3. How old are you? A. I am thirty-seven years old.

"4. Have you voted in any presidential election since you were twenty-one. A. Yes, sir.

"5. Can you name the Democratic nominee for President, for whom you voted for since that time, say the last sixteen years? A. There has been several running, I honestly don't remember which one it was.

"6. In the last State election, when Mr. McCreary was the Democratic nominee for Governor, did you support the Democratic ticket at that time? A. Yes, sir.

"7. You say you did? A. Yes, sir."

Where there is a registration of the voter the question is of easy solution; but there being no registration in the Covington precinct, we are left to the application of the final clause of section 19, *supra,* to the facts as above given, in determining the right of Wheeler to vote in this primary. Under this evidence the precise question is not with which party did he affiliate, for he may not have affiliated with any party. The real question is, did he affiliate with the Democratic party? One's right to vote in a Democratic primary election depends upon his affiliation with the Democratic party, precisely as his right to vote in a Republican primary depends upon his affiliation with the Republican party. If the voter declares his affiliation when he registers, the registration is conclusive of his right to vote in the primary of the party with which he registered, and not otherwise.

But how is the voter to declare his affiliation in those precincts where there is no registration? The Century Dictionary defines "affiliation" to mean, "association in general; relation; connection; friendship; alliance." The same work defines "declare" to mean, "to make clear; to clear up; free from obscurity; make plain; to proclaim; announce;" and "to declare one's self," is "to throw off reserve and avow one's opinions; show openly what one thinks, or which side one espouses."

For one, therefore, to declare his party affiliation he must, in some way, make plain which party he espouses and allies himself with.

In Hager v. Robinson, 154 Ky., 506, we quoted with approval the following language from Rouse v. Thompson, 228 Ills., 522:

"The object of holding a primary election by a political party is to select party candidates, and it is too plain for argument that no voter should be permitted to vote at a primary election of a political party, unless he is a member of such party; and, unless provision is made to prevent persons voting at a primary election for the candidates of a party who are not affiliated with such party, the whole scheme of nominating party candidates by a primary election would fail, because of its being incapable of execution."

In the same opinion we quoted from *Ex parte* Wilson, 7 Okla. Cr., 610, 125 Pac. Rep., 739, as follows:

"A primary election is one for the nominating of candidates for office of the respective political parties by the members thereof. If Republicans vote the Demo-

cratic party ballot, and Democrats vote the Republican ballot, a Socialist vote any ballot but their own, then nominations so made cannot be said to be party nominations. It needs no argument for the position that to permit electors participating in a primary election to vote indiscriminately any party ballot they might choose to select, regardless of their party affiliations, would be simply putting a premium upon deceit, dishonesty and fraud, and would make it possible for the worst elements of the several political parties participating to direct and control their nominations. Obviously all of the provisions of the primary election law were enacted by the Legislature to prevent electors from voting any ballot except that of their respective parties, and thereby prevent fraud and preserve the purity of the ballot.''

And again on page 507 we further quoted from said opinion in *Ex parte* Wilson, as follows:

''If the challenge be on the ground that the elector is not, in good faith, a member of the party whose ticket he is attempting to vote, the duty of the inspector is the same as upon a challenge as to any other disqualification. An elector who resists the challenge and makes oath that he possesses the qualification contemplated by the Constitution should bear in mind that the usual test is, did the elector vote the party ticket at the last preceding general election? Another rule of party membership is: An elector who affiliates with the party and stands by his party organization, and as such member yields obedience to party rules and usuages, and accepts and supports the regular party nominations.''

On the one hand it is insisted that the only test of one's party affiliation is his vote, while others insist with equal vehemence that a mere declaration or mental reservation of one's political affiliation, without any open declaration or act of voting, is sufficient to make him a voter in a primary within the meaning of the statute. In our opinion, both of these views are extreme, and do not correctly interpret the statute. This conclusion is fortified by a reading of section 6 of the Primary Law, which, in fixing the qualifications of a candidate in a primary, requires him to state in his nominating petition that he is a member of the political party whose nomination he seeks, and affiliated with said party, and that he supported its nominees at the last regular election. As above pointed out, section 19, pre-

scribing the qualifications of unregistered electors, only requires a declaration of their party affiliation; it does not require them to state that they supported their party's nominees at the last regular election. The act clearly intended to impose different and more stringent qualifications upon candidates, than upon electors. One may be firmly convinced in his political views, and yet by reason of his temperament may say very little upon the subject; and, by reason of his station or business habits, may be able to cast a vote but seldom, or perhaps never. Experience shows that quite a substantial percentage of the voters never vote, and that in those campaigns where the issues are sharply drawn, and enthusiasticly discussed, the vote is much larger than in quiet campaigns. But where the voter actually votes, his act of voting is the best indication of his party affiliation, even though he might verbally declare it to be otherwise.

For a great many years, in Oldham county, the Republicans have put out no ticket for county officers, and consequently have held no primaries. A Democratic nomination for a county office being considered by all as equivalent to an election, the Republicans of that county have usually confined their voting to a participation in the Democratic primaries. The evidence shows that in the Covington precinct many avowed Republicans voted in the August Democratic primary without objection, and had been voting in Democratic primaries, for years. They had no way of participating in the selection of county officers except by voting in the Democratic primaries. Usually, they did not vote in the general election because there were no Republican candidates. Candidates in a primary, however, have the right, under the law, to have the nominees of their party selected by those who affiliate with their party.

In Wheeler's case we find that he had been voting in the Democratic primaries for twelve years; that he had voted for both Republicans and Democrats in the general elections; he is 37 years old, and while he says he has voted in presidential elections since he became of age, he cannot name any Democratic nominee for President for whom he voted; that in the State election of 1911 he voted for McCreary, the Democratic candidate for Governor, while in the presidential election of 1912—the last opportunity he had of declaring his political affiliation, between the Democratic, the Republican, and the Progressive candidates—he voted the Re-

publican ticket; and when it was suggested to him that he had voted the Democratic ticket as often as he had voted the Republican ticket, in general elections, and he was asked if he would say he was a Democrat, he answered "I don't know about that." We are forced to agree with that conclusion. It is true he says he meant to declare himself a Democrat by voting in the Democratic primary. His vote, however, was not challenged; he was not asked if he was a Democrat or if he would support the Democratic nominees; he merely called for a ticket, and the officers gave it to him and he voted, as he had been doing for many years. This act of voting in the Democratic primary was not, under the circumstances, inconsistent with his affiliations with the Republican party, since it was generally known that Republicans were permitted to vote in the Democratic primary.

If we were called upon, under this evidence, to define Wheeler's political status, we would say he was an independent, with strong Republican leanings. He certainly did not affiliate with the Democratic party when he last declared his party affiliation by voting for Mr. Taft, the Republican candidate for President. We are of the opinion that the circuit court improperly treated Wheeler as a legal voter in the Democratic primary; and since he voted for Voiers, his vote should be deducted from appellee's total of 347 votes, leaving appellee a net total of 346.

2. The testimony of the other contested voter, E. M. Vest, is as follows:

"1. Mr. Vest, you live in Covington precinct, in Oldham County? A. Yes, sir.

"2. Did you vote in the primary election which was held on the second of August this year, in that precinct? A. Yes, sir.

"3. With what political party are you connected or affiliated? A. I used to vote the Republican ticket; but that has been seven or eight years ago, and I made up my mind to vote the Democratic ticket.

"4. When? A. Pretty soon after I voted.

"5. When did you vote the last time? A. Seven or eight years ago.

"6. The last vote that you cast then was for a Republican nominee? A. Yes, sir.

"7. Where did you cast that vote? A. At Covington.

"8. What election? A. I don't remember now.

"9. And you have not voted since that time? A. Not until some time ago.

"10. You have never supported any of the Democratic nominees at any of the general elections? A. No, sir.

"11. You did not vote last fall? A. No, sir.

"12. For whom did you vote, for the nomination for assessor, in the last primary? A. Is it necessary I should say, Judge?

"By the court: Yes, answer the question.

"A. I voted for Mr. Voiers.

"13. Did you at the last general election or at any time previous to that, support or lend any aid to the election of any Democratic nominee, in that precinct? A. No, sir; I did not, I never took any interest in the elections as I usually lived a good ways from the polls.

"By the court: You say that you have not voted the Republican ticket for the last six or seven years? A. It has been something like that.

"By the court: And since you have voted, your sympathies have been with the Democratic party? A. If I had voted I would have voted the Democratic ticket.

"By the court: You in good faith made up your mind to change your politics and affiliate with the Democratic party? A. Yes, sir.

"By the court: That was some time before this primary? A. Yes, sir; I decided a little while after I voted the last time.

"By the court: Do you know why you did not vote in the last general election? A. No, sir; I can't; I didn't take any interest in the elections; I might have been busy at the time; I don't know.

"By the court: Do you remember when Taft, Roosevelt and Wilson ran for President what were your sympathies in that race, if you remember? A. I did not know very much about it; I had no idea of going and voting; but at this election there was two or three men running that I liked pretty well, and I thought I would go and vote.

CROSS-EXAMINATION.

"1. If you had gone to the polls last fall, would you have voted the Democratic ticket?

"Objected to by counsel for the contestee, objection overruled, to which ruling of the court, the contestee, by counsel excepted.

"A. I think I would."

The substance of this evidence is that up to seven or eight years ago Vest was a Republican and voted the Republican ticket, but at that time he made up his mind to thereafter vote the Democratic ticket, although he has never theretofore voted the Democratic ticket. And while he has never supported any of the Democratic nominees in any of the general elections, and did not vote in the presidential election of 1912, he has never during the last seven or eight years voted the Republican ticket, or any ticket. He says, however, that when he quit voting the Republican ticket he made up his mind, in good faith, to change his politics and affiliate with the Democratic party, and that if he had voted at all during the interval he would have voted the Democratic ticket. His interest in politics and elections seems to have extended no further than to vote for his personal friends in the Democratic primaries. The controlling element in Vest's case, therefore, in the absence of his actually voting in a general election, is his determination, persisted in for the last eight years, of calling himself a Democrat, and voting in the Democratic primaries. In our opinion this clearly qualified Vest as a voter in that primary, and the circuit judge properly so ruled. The result is a tie between the appellant and the appellee, each having received 346 votes.

3. It is insisted that the court erred in requiring the witnesses to testify for whom they voted in the primary. The rule upon this subject, as applied to contests under general elections, is, that the voter will not be required to tell for whom he voted, over his objection that such testimony might incriminate him. Tunks v. Vincent, 106 Ky., 829; Scholl v. Bell, 125 Ky., 778.

It is suggested, however, that neither Wheeler nor Vest raised any objection when they were asked for whom they had voted. While it is true the objections made by the witnesses are not formal, in the sense they use the term "objection," nevertheless the colloquies between the court and the witnesses clearly show that the witnesses were relying upon the privileges given them by the law, and that the court denied that privilege by requiring them to answer. We think the question of privilege was sufficiently raised by the language set out in the testimony of the witness above given.

It is contended, however, that the general rule which exempts the witness from incriminating himself, as above stated, does not apply to witnesses who had merely voted in primary election contests, because there are no offenses denounced or punishment provided by the primary election law against electors; and the witness having committed no offense, he cannot therefore, incriminate himself. Opposing counsel answer this contention by referring to section 1552 of the Kentucky Statutes, a part of the general election law, which provides that any offense under the general laws of the State concerning general elections shall also be an offense in primary elections, and shall be punished in the same form and manner as is provided for the punishment of similar offenses by the general laws; and that all the penalties and provisions of the general laws shall apply with equal force to primary elections. A similar provision is found in section 35 of the Primary Election Law.

But neither Wheeler nor Vest committed any offense against either the general election law or the Primary Election Law by voting in the primary election, since both possessed the necessary qualifications of sex, age, and residence prescribed by section 1493 of the Kentucky Statutes, which fixes the qualifications of voters in general elections. Section 19 of the primary election law, above quoted, makes the qualification of electors in primary elections, the same as the qualification in general elections, with the further qualification added, that in precincts without registration, the voter can vote only the ballot of that party with which he declares his affiliation. There is, however, no punishment provided by either law where the elector, who is a legally qualified voter, votes one party ballot in a primary election, when, by reason of his political affiliations, he should have voted a different party ballot; and that being true, the voter is in no danger of incriminating himself by being required to tell for whom he voted at a primary election.

It follows, therefore, that the general rule, which would exempt the witness from so testifying, is not applicable to primary elections; and that the court properly required Wheeler and Vest to state for whom they had voted.

The judgment of the circuit judge will have to be reversed for his error in counting Wheeler's vote for appellee.

4. Section 28 of the primary election law, however, requires this court to enter a final order disposing of the case. The procedure is provided by the statute.

Subsection 11 of section 1596a of the Kentucky Statutes, applicable to general elections, provides that where two or more candidates have received the highest and equal number of votes for the same office, it shall be determined by lot which of the candidates is elected; while section 36 of the Primary Election Law of 1912 provides that primary elections under the act shall be conducted substantially as now provided by law in case of regular elections, and that any omission in said Primary Act of 1912 shall be supplied as nearly as practicable from the statutes governing the November elections. Giving to the two statutes, when read together, a reasonable working interpretation, it requires the determination of the case by a breaking of the tie vote, in this court, and speedily.

The appellant and the appellee will, therefore, appear before the clerk of this court, if they so desire, either in person or by properly accredited representative, on October 3, 1913, at 11 o'clock, a. m., and he shall then and there in the presence of the candidates, if they appear, determine by lot which of the two shall be declared the nominee for county assessor, and report the result to the court, for certification as required by the statute.

Judge Turner dissents from so much of the foregoing opinion as holds that Vest is a qualified voter in a Democratic primary.