## Drennan v. Roberts.

(Decided May 30, 1930.)

T. C. BENNETT, S. D. HODGE and W. J. MILLER for appellant.

R. W. LISANBY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

W. E. Drennan and Allie Roberts were candidates at the November election, 1929, for the office of member of the board of education of Caldwell county from educational division No. 3. By the official count, Drennan received 261 votes and Roberts 252. Drennan received the certificate of election, and Roberts filed contest. The case turns on precinct 3. This precinct includes a part of the city of Princeton and also a part of the Princeton graded school district, which includes the city and a mile or more of surrounding territory. The county board of

education is elected by the remainder of the county outside of the graded school districts. Roberts filed his contest, alleging that thirty-one persons who resided in the city and twenty-six who resided in the graded school district outside of the city, naming them, voted in the election and voted for Drennan. Drennan filed answer denying the allegations of the petition. Proof was taken which showed that the clerk printed for this precinct 140 ballots. According to the officer's return, Drennan received in this precinct seventy-one votes, Roberts forty-nine; three ballots were spoiled. Roberts took the depositions of thirty-one persons who lived either in the city or in the graded school district outside of the city. Of these, eight testified that they did not vote; eight did not recollect how they voted; eleven voted for Drennan, and four for Roberts. Drennan took the deposition of nine of the persons named in the petition who said they voted for Roberts. When the case came on for trial, Roberts did not read in his behalf the depositions of the four witnesses who said they voted for him, but read the other twenty-seven depositions he had taken. Drennan then offered to read these four depositions and offered to read the nine depositions he had taken of persons who testified they had voted for Roberts, but the court refused to allow these depositions read on the ground that Drennan had filed no counter contest. It appeared from the evidence taken by the plaintiff and read before the court that the ballots gave out shortly after 3 o'clock, and there was quite a number of voters there waiting to vote but who could not get ballots to vote. There were as many as fifteen or twenty of these left there when the poll closed at 4 o'clock. The circuit court adjudged that it could not be reasonably determined from the proof that either Drennan or Roberts was elected, and ordered a new election. Drennan appeals, and Roberts prosecutes a cross-appeal, each insisting that he should have been adjudged elected.

It is earnestly insisted for Drennan that, as the petition named the fifty-seven persons who had voted and alleged that these persons had voted for him, it was not necessary for him to file a counter contest, but that, under the allegations of the petition, he could take proof and show how the persons named therein did vote. See 20 C. J. p. 238, sec. 319. The court is constrained to adopt this view. It was incumbent upon Roberts to defeat Drennan's prima facie right to the office, as shown by his cer-

tificate of election, to prove not only that there were illegal votes cast at the election, but that enough of these voted for Drennan to change the result. The illegality of the votes named in the petition was one of the questions in the case, and, when it was shown that these votes were illegal, Drennan could show that they did not vote for him and should not be subtracted from his total. Roberts, by his contest, was seeking to have himself declared elected. But he was not elected if the named illegal votes were cast for him and not for Drennan. If Drennan had sought to show that other votes than those named in the petition were illegal and cast for Roberts, it would have been necessary for him to file a counter contest, but, when the election was assailed on the ground that certain named votes were illegal, he had a right to show that these illegal votes were cast for Roberts, for in showing this he, in substance, only showed that the allegations of the petition were untrue, which charged that all of these votes were cast for him. Ky. Stats., sec. 1596a-12.

The trouble with the election arose in this way. The county clerk sent out 140 ballots, which were all that were necessary for the legal voters in the precinct. In making this estimate, he left out the voters in Princeton and in the Princeton graded school district, for these persons had no right to vote in the election of a member of the county board. The election officers, however, did not know this, and, by what seems to be a mistake as to their duty, gave the voters, when they came from any part of the precinct, a school ballot as well as a county ballot. In this way the school ballots gave out as above stated. By section 1596a-12, Kentucky Statutes, it may be adjudged that there has been no election if it shall appear from inspection of the whole record that there has been such fraud, intimidation, bribery, or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected. The court does not find here that there was any actual fraud by the election officers; but, as is generally held, the statute should not be confined to cases of actual fraud. In Johnson v. Little, 176 Ky. 505, 196 S. W. 156, 159, Ann. Cas. 1918A, 70, the court, after discussing the previous cases decided by the court, thus stated the rule: From these cases we gather the rule to be that while it is the disposition of the courts to uphold the validity of elections, where it can reasonably do so, yet if the record presents a state of case

preventing the court from arriving at a reasonably accurate conclusion, it will declare that no election had been held, which we think is an eminently proper rule." To same effect, see C. J., 261, sec. 373.

Roberts can in no view of the case be adjudged elected, for Drennan had nine majority on the official returns, and if we deduct eleven illegal votes for Drennan, this would only give Roberts a majority of two; but the proof by him showed that thirty-one persons living in the city got ballots, eight did not vote, eight did not recollect how they voted, and seven voted for Drennan. If the other proof in the case is disregarded, there is no showing for whom sixteen illegal votes were cast. The burden was on him to show, not only that illegal votes were cast, but that he received the majority of the legal votes. The proof actually taken by him showed that four of these votes were for him, and he could not avoid the effect of this proof by not reading these depositions. They were a part of the record.

It remains to determine whether Drennan may be declared elected. On the face of the returns and the proof, Drennan has a majority of eleven over Roberts. There were eight persons who did not know how they voted. If we deduct all of these from Drennan, he still has a majority of three. While there is proof for plaintiff that the ballots gave out a little after 3 o'clock and there were a number of persons asking for ballots who could not get them, there is no proof that the persons who were asking for ballots and did not get them then resided in this school district or were qualified to vote in this election. They were holding an election there that day for county officers and for city officers also. While there is proof that fifteen or twenty people were there when the poles closed, there is no proof that these were legal voters in the school election. It was incumbent upon the contestant to show that there were legal voters there who were deprived of voting, by the ballots giving out, sufficient in number to overcome Drennan's apparent majority. This the proof does not show. On the contrary, the testimony of the officers of the election is, in substance, that there was little or no demand for ballots after they gave out. It is the policy of the law to sustain elections where the proof is doubtful. The proof for the contestant here is not sufficient to show that enough legal voters were deprived of voting by the ballots giving out

to change the result of the election. Drennan is therefore entitled to the office.

Judgment reversed, and cause remanded for a judgment as above indicated.

Judge DIETZMAN dissenting.

Whole court sitting.

### DISSENTING OPINION BY JUDGE DIETZMAN.

It has been written time and again by us that the courts have no inherent power to try contest election cases, and they must look to the statute as the source of whatever power they can exercise in that regard. Section 1596a-12 of the Statutes is the applicable statute governing this case. In my judgment, that section never contemplated that a contestee could attack the vote of the contestant without filing a counter contest. The majority opinion is forced to cite in support of its conclusions some general statements culled from Corpus Juris, but it avoids discussing or attempting to differentiate the case of Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753, decided by this court. In that case, the contestant in his contest proceedings did not attack Ball precinct No. 9. The contestee in his counter contest alleged that the contestant had received illegal votes in that precinct. The trial court determined from the evidence that both contestant and contestee had received illegal votes in that precinct, and deducted the illegal votes from the respective totals of the parties. We held that the trial court erred in deducting the illegal votes in that precinct from the contestee's totals, as the contestant had not relied upon that precinct in his contest. But it may be argued that in this case neither party specified by name the illegal voters, and hence that case is different from this one. The first answer to that contention is that we held in the Sturgill case that the parties by their pleadings had waived the necessity for the names of the illegal voters to be set out. Hence the parties in that case were on the same footing as the parties in this case.

In the second place, the contestee in the Sturgill case himself opened the question of the legality of the votes in Ball precinct. If it was necessary for him to show that he received a majority of legal votes in order to be entitled to the office, as the majority opinion says it was necessary for Roberts to establish here, then certainly, if the majority opinion be right about deducting

the illegal votes Roberts got from his total, the court should have deducted the illegal votes the contestee got in the Sturgill case in the Ball precinct.

On the authority of the Sturgill case, I dissent from the majority opinion, and am of the opinion that Roberts was entitled to the office involved.