**Nora E. WILKINSON, Appellant,**

v.

**C. J. QUEEN et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 10, 1954.

Rehearing Denied Feb. 4, 1955.

Mac Stephenson, John W. McKenzie, Ashland, for appellant.

E. Poe Harris and Simeon S. Willis, Ashland, for appellees.

CLAY, Commissioner.

This is a second appeal in a local option election contest case. In the first appeal, Wilkinson v. Queen, Ky.1954, 269 S.W.2d 223, it was decided that 278 challenged votes were illegal because the voters did not sign the comparative signature book as required by KRS 117.655 and 117.745. The case was remanded for a determination by the circuit court of how these illegal voters had voted, if such was necessary to decide the result of the election.

Upon return of the case appellees, who represented the "dry" forces and who had originally won the election by a 221 vote majority, moved for a summary judgment. This motion was sustained without further testimony being taken on the ground that upon deduction of the 278 illegal votes, properly allocated, the "dry" forces still won the election by a majority of 25 votes.

On this appeal appellant first contends it was error for the circuit court to permit appellees to file what appears in the record as a list of votes by precinct as cast in the local option election. This list was certified to be true and correct by the Boyd County Clerk as appearing of record in the Boyd County Election Commissioner's book. It is contended that the certified list is not an original record which could be filed in evidence.

Under KRS 118.370(2) the county clerk is required to act as the clerk of the board of election commissioners in the counting and certifying of the ballots and the result of the election. As such he would be a legal custodian of the board's records, and under CR 44.01 a copy attested by him of such record is properly admissible in evidence. It may also be pointed out that the correctness of this tabulation is in no way questioned, and this contest has been practiced throughout by appellant on the basis of the figures shown therein. The objection to the filing of this record is unfounded.

The principal contention of appellant is that the circuit court could not have determined the results of the election without hearing further proof concerning illegal voters and the manner in which they voted. Contrary to appellant's contention, the opinion in the first appeal of this case did not require the taking of further proof unless it was necessary for a determination of the result of the election.

As before mentioned, the commissioners originally certified that the "drys" had won the election by a majority of 221 votes. In the contest it was alleged by appellant that 278 persons had not signed the comparative signature book, as required by KRS 117.655, and that these persons had voted "dry". On the first appeal we decided that these 278 voters were illegal. Some of them had been shown to have voted "dry", and it appeared that to determine the result of the election it may have been necessary to examine all of the others. However, appellees convinced the circuit court, and have convinced us, that regardless of further proof, appellant cannot establish a majority of votes for the "wets".

The matter is one of mathematical computation. Appellees are willing to concede that every illegal vote of this character which was shown to be, or which could be shown to be a "dry" vote may be deducted from their side. Reciprocally appellees insist that such illegal votes of this character as could not possibly be "dry" votes must be deducted from appellant's total.

An example of the method of computation may be given. In Lark Precinct there were 143 illegal votes. The tabulation shows the "drys" as receiving 104 votes and the "wets" 72. Conceding that every one of the 104 "dry" votes was illegal, there remain 39 additional illegal votes which must of necessity have been included in the "wet" count of 72, and must be deducted therefrom. Pursuing this same policy throughout the precinct tabulations, it appears that appellees still win by a majority of 25 votes.

Appellant raises two objections to this method of calculation. It is contended that since there was no counter-contest interposed in the action, no votes may be deducted from the "wets". This is contrary to the principle stated in Drennan v. Roberts, 234 Ky. 574, 28 S.W.2d 735, and Widick v. Ralston, 303 Ky. 373, 197 S.W.2d 261, 198 S.W.2d 56. In those cases it was held that the contestee may take advantage of any ground of contest asserted by the contestant although counter-contest proceedings are not filed. Accepting this rule, appellant still argues that proof is necessary. It seems to us that since we

decided on the first appeal that all of these votes were illegal, and since appellant could not possibly prove that there were more illegal "dry" votes cast in any given precinct than the total number recorded for the "drys", the additional illegal votes must of necessity be taken from the "wets". Further proof could not change the inevitable conclusion that must be reached on this record.

Appellant further contends that conceding the votes adjudged illegal because the voter failed to sign the comparative signature book were properly deducted from both sides, there were still 28 other voters who were challenged by the appellant. However, 13 of these voters thus challenged on other grounds are included in the votes already deducted from the "drys" in the foregoing calculation. The fact that a particular voter may have been disqualified on two grounds would not authorize us to deduct from the "drys" two votes.

After careful consideration of the entire record, we are forced to the conclusion that appellant, by the taking of further proof, could not establish the illegality of a sufficient number of dry votes to change the result of the election.

The judgment is affirmed.