**Troy DEATON, Appellant,**

**v.**

**J. Floyd LITTLE, Appellee.**

Court of Appeals of Kentucky.

Oct. 24, 1969.

As Modified on Court's own Motion
Feb. 27, 1970.

Petitions for Rehearing, Modification and
Extension Denied Feb. 27, 1970.

Arthur L. Brooks, Jr., Lexington, William P. Bach, Jackson, for appellant.

Jackie Franks, Jackson, H. M. Shumate, Shumate, Shumate & Flaherty, Irvine, for appellee and cross-appellant.

REED, Judge.

As in Watts v. Fugate, Ky., 442 S.W.2d 569, an election for the office of member

of the Breathitt County Board of Education has generated an election contest action in which legal problems are raised that necessitate a re-examination by this court of our law relating to election contests.

On the basis of the official returns, Troy Deaton defeated J. Floyd Little by a plurality of 21 votes at the November, 1968, election for the office of school board member. The term of this office is for four years commencing in January of 1969. Deaton was certified as the winner of the election. Little, as contestant, filed an election contest action pursuant to KRS 122.070 against Deaton, as contestee. Little asked that it be adjudged that he, not Deaton, had been legally elected to the office. Little alleged that specifically named persons had voted for Deaton, but that they were disqualified voters and that these illegal votes should be deducted from Deaton's total vote; it was also alleged by the contestant that the vote cast in a specifically named precinct should be eliminated from consideration because of general illegal voting and other violations of election laws in the conduct of the election at this precinct. Deaton filed an answer and countercontest in which he alleged that specifically named persons were disqualified voters and had voted for Little, and he asserted that these votes should be deducted from Little's total vote. Deaton sought judgment that he, not Little, had been legally elected to the office.

As the result of a trial in open court at which both parties introduced their evidence, the trial judge first decided that Deaton, the contestee, was the winner by a plurality of one vote; however, after both contestant and contestee had moved for amended findings, the judge then decided that Little, the contestant, had been elected by a plurality of two votes. Thereupon judgment was entered declaring Little the legally elected board member. Deaton appeals, asserting that the judge erred in deducting the votes of specified voters from his total and also erred in failing to deduct the votes of other specified voters from the

contestant's total. Little cross-appeals and argues that the judge should have deducted more votes from the contestee than he did; that error was committed in deducting from contestant's total certain votes, and that another prejudicial error occurred when the trial court struck from contestant's pleading a paragraph which sought to eliminate the vote of Vancleve precinct No. 3 from consideration in determining the results of the election. Little, therefore, urges that he should have been declared the victor by a wider margin. We have decided that neither the contestant nor the contestee can be said to have been elected by a plurality of the legal votes cast. The office that is the subject of this litigation is vacant by operation of law.

According to statutory procedure the contestant introduced his evidence in chief first. He first called some of the persons specifically named in his pleading and undertook to establish that each of them was a disqualified voter who had voted for the contestee. He then called persons specifically named in the pleading of contestee as disqualified voters who had voted for the contestant, and undertook to prove only that they had voted for the contestee; he pointedly did not attempt to prove that they were disqualified or illegal voters. After completing this maneuver the contestant announced closed and moved the court to be permitted to withdraw from his pleading the names of all persons alleged to be illegal voters whom he had not introduced as witnesses. The trial court at this point overruled his motion. The contestee thereupon moved the court to be permitted to withdraw from his pleading the names of all witnesses whom he had specified in the pleading whose votes were "not in issue." In an exchange at this point in the proceedings between counsel for the contending parties and the trial judge, there is only one impression that emerges clearly—the attorneys were confused.

Although counsel for the contestee stated that he wanted to withdraw the names of

"specific witnesses," he was not afforded the opportunity to name them because counsel for the contestant convinced the trial judge that the names could not be withdrawn over his objection; the contestee, however, made no avowal specifying the names he desired to withdraw. The contestee then introduced his witnesses and in the course of his evidence proved to the satisfaction of the trial judge that one of the voters named by the contestant in his pleading was an illegal voter who had voted for Little. The name of this voter is Margaret Deaton, but she was one of contestant's specified, but uncalled, voters whose names the contestant had claimed the right to withdraw. Finally, the evidence was completed, and the trial judge concluded that he had erred in some of his rulings during the trial.

The trial judge in his written opinion resolved the pleading and procedural problems in this manner: The contestant's action in calling persons named as illegal voters in the contestee's responsive pleading was sustained; however, the contestant was required to prove in each instance that such voter was disqualified and had voted for the contestee before the vote was deducted from the contestee's total; the contestee was denied the right to withdraw the names of voters specified in his pleading whose testimony had been introduced by the contestant, but the contestant's withdrawal of names of voters specified in his pleading prior to the introduction of their testimony by the contestee was declared effective, thus reversing a prior ruling. The effect of the last decision was that the proved illegal vote of Margaret Deaton for the contestant was not deducted from the contestant's total.

In regard to the trial judge's resolution of the pleading and procedural issues, the contestee argues that he was prejudiced in not being permitted to withdraw his pleaded names of voters whose testimony the contestant introduced, while the contestant was permitted to effectively withdraw pleaded names, thereby precluding contestee upon a proper showing from having the votes deducted from contestant's total. In other words, the contestee argues that the sword should have two edges. The contestant insists that he was prejudiced because he was required to prove that the voters alleged by the contestee to be disqualified were in fact illegal voters. The contestant urges that their disqualification had been admitted by the contestee's pleading, and therefore all that should have been required was proof that such voters in fact voted for the contestee in order to cause these votes to be deducted from the contestee's total.

We are faced with practical problems of conflicting policy considerations, evidenced by confusing statements of dictum in prior opinions, in our effort to ascertain the correct mode of procedure in the situation presented by this case. It may well be argued that in election contest cases dealing with alleged illegal voters, it places the pleader in a dangerous position to deny him the right to withdraw the names of alleged illegal voters from his pleading where his adversary has the opportunity to induce them to falsely testify that they voted for the pleader. On the other hand, it appears contrary to accepted principles of justice to permit a litigant in an election contest case to use a procedural maneuver to deny to his adversary and the court an opportunity to determine the truth concerning the legality of the vote for either contending candidate.

The fundamental difficulty lies in the assessment of the credibility of the witness. This determination of credibility must be made in the context of deciding whether to believe the statements of a witness who admits that although he was disqualified to vote he, nevertheless, voted. The character of the disqualification; the existence or opportunity of actual knowledge by the voter of the disqualification; the interest of the witness in the cause of the adversary —all these are elements to be considered in the determination of credibility. We are persuaded that each litigant must be afford-

ed an equal opportunity to develop the truth and the problem of credibility must be left to the determination of the fact finder— the trial judge.

In May v. Drake, 309 Ky. 819, 219 S.W. 2d 31, we recognized the problem of the confusing statements of dictum in opinions prior to that case. We characterized some of those prior statements as no longer binding, and we left open for future decision one of the issues presented in this case. "It is a settled principle in this state that either party to an election contest may take advantage of the grounds asserted by his adversary. * * * [t]he disqualification of voters named by one party is a ground of which advantage may be taken by his opponent. It follows that either party * * * may rely, and continue to rely, upon the established disqualifications of all specifically named voters who are brought into the case by the pleadings." That language from the case just cited incorporates the essence of the rule.

This rule was first established in Drennan v. Roberts, 234 Ky. 574, 28 S.W.2d 735. It was applied in the cases of Everman v. Thomas, 303 Ky. 156, 197 S.W.2d 58; Widick v. Ralston, 303 Ky. 373, 197 S.W.2d 261, 303 Ky. 395, 198 S.W.2d 56; and Wilkinson v. Queen, Ky., 274 S.W.2d 487. In Hodges v. Murray, 240 Ky. 127, 41 S.W. 2d 923, the rule was also applied, but the opinion contained dictum to the effect that application of the rule could be avoided by the pleader exercising a right to withdraw the pleading of names of illegal voters at any time before final submission of the case. This dictum was withdrawn in May v. Drake, 309 Ky. 819, 219 S.W.2d 31. In the May case we refused to permit the pleader to withdraw the names after their evidence was produced; whether the pleader would be permitted to withdraw names from his pleading before the introduction of their evidence was left open for future decision.

In Durr v. Washington County, Ky., 339 S.W.2d 444, we held that the addition of names in support of an allegation that ille-

gal votes were cast is tantamount to stating new grounds of contest, such names cannot be added by amendment after the prescribed time for pleading has expired. In election contest actions, the evident purpose of the provisions embodied in Chapter 122 of our statutes is to require prompt pleading and expeditious determination of the truth.

■ In the case before us, we are convinced that the contestant engaged in a mere procedural maneuver when he undertook to withdraw his pleaded names whose testimony he had not introduced. Since the contestant has the statutory right to first complete his evidence, this maneuver served to remove from judicial consideration pertinent facts involved in the controversy. It will not be permitted to succeed. The public interest is involved. Nor can the contestee succeed by a like procedural maneuver in removing from judicial consideration the testimony of his pleaded illegal voters introduced by his adversary. The question left open in the May case is now answered. All specifically named voters in the pleadings of either the contestant or the contestee may be used by the adversary. All statements in prior opinions inconsistent herewith are no longer binding.

Although there is language in Drennan and perhaps some of the other cases cited herein which might indicate to the contrary, the truth is that in all prior cases where a litigant in an election contest case used as witnesses persons alleged by his adversary to be illegal voters, the evidence established not only that the voter cast a vote for the adversary but also that the voter was in fact disqualified. Prior statements in opinions that might indicate otherwise are neither correct nor binding. The trial judge's ruling on this point was correct. The named illegal voters constitute a ground of contest—not a judicial admission.

■ Having disposed of the problems of pleading and procedure, we now consider

the merits. We have carefully reviewed the transcript respecting the complaints of the contestant and the contestee concerning the trial judge's findings in deducting illegal votes from each of them. In every instance except two, we find substantial evidence to support his findings. CR 52 applies to election contest actions as it does to any civil action.

The trial judge decided that Little was elected by a plurality of two votes. In reaching this conclusion, he refused to deduct from Little the illegal vote of Margaret Deaton. From our foregoing discussion, it is apparent that his finding in this respect was clearly erroneous. Our finding reduces Little's plurality to one vote.

The vote of Rosa Lee Campbell was deducted from Deaton's total. Rosa Campbell was an illiterate person who failed to execute the required oath to receive assistance in voting. She was a disqualified voter. She testified that she intended to vote the straight Democratic ticket and for Deaton. The voting machine was equipped with a large party lever and in another place there were smaller individual levers which registered votes in the school board race. According to Rosa Campbell she told "a big fat man", who undertook to vote for her, how she wanted to vote. She insisted that he pulled only one big lever. She was unable to state that she voted for Deaton. The "big fat man" was not produced. Although Little argues that there is a presumption that the officer did his duty, we are not so persuaded. The only unequivocal testimony is that only the party lever was pulled. No circumstantial evidence is present to reflect on the credibility of the testimony. We hold that the finding of the trial judge deducting the alleged vote of Rosa Campbell from Deaton's total lacks any evidentiary support and is clearly erroneous. As a result of this conclusion, we find that neither Little nor Deaton received a plurality of the legal votes cast; and, that so far as this record discloses, each received the same number of legal votes cast.

■ The trial judge's ruling which struck the contestant's attack on Vancleve No. 3 precinct was correct. The rejected attack consisted only of general allegations of illegal voting and violations of election laws. The total vote cast by the precinct was not specified in the paragraph; the total vote cast in the election was not specified in the allegations; for which candidate the unnamed voters cast their votes is not specified, and the illegal voters are not identified. This was plainly insufficient as pleading a ground of contest as the result of which one candidate would be declared the victor over another. Watts v. Fugate, Ky., 442 S.W.2d 569. Proper pleading in this regard would, if proved, have resulted in an adjudication that the election was illegal and neither candidate could be regarded as elected. This finding would have necessitated a judicial declaration that this particular office was vacant.

■■ Since we have decided that neither the pleadings, the evidence, nor the findings of the trial judge permit us to conclude that such fraud, intimidation, bribery or violence in the conduct of this election existed which would authorize us to declare that no valid election occurred, it follows that the provisions of KRS 122.-080(4) does not apply; therefore, this office cannot be regarded as vacant. Our conclusion in this case is that the contestant and the contestee each received the highest and equal number of legal votes for the same office; hence, the correct result of the election is a tie between the two candidates.

We are aware of no statute or judicial decision in this state that authorizes the body to which election is sought to judge the eligibility and election returns of its members in the case of county boards of education. Therefore, the case of Rose v. Turner, 301 Ky. 272, 191 S.W.2d 397, does not apply. KRS 118.400 provides in substance that if the county board of election commissioners finds that two or more candidates have received the highest and equal number of votes for the same office, the

board shall determine by lots which of the candidates is elected. This statute governs general elections. The same procedure for determination of a tie vote in a primary election for nomination is provided in KRS 119.230. In view of this repeated legislative declaration, we conclude that the Breathitt County Board of Election Commissioners should be reconvened and directed to determine by lot which of the two candidates in this case shall be regarded as elected. The candidate so selected shall be deemed to have been legally elected to the office for the term prescribed by law. Cf. Heitzman v. Voiers, 155 Ky. 39, 159 S.W. 625, and Covington v. Joiner, 200 Ky. 378, 254 S.W. 1048.

We direct that a new judgment be entered adjudging that Little and Deaton received the highest and equal number of legal votes cast for the office in question; that the Breathitt County Board of Election Commissioners be immediately reconvened and that this board determine by lot which of the two candidates shall be regarded as elected; that the candidate so selected shall be issued proper certification by the Board of Election Commissioners evidencing his election to office and that such candidate be deemed legally elected to the office for the term prescribed by law.

The judgment is reversed on the original appeal with direction for the entry of a new judgment as directed herein and on the cross-appeal the judgment is affirmed.

All concur.

## ADDENDUM AND MODIFICATION OF OPINION

The foregoing opinion was rendered on October 24, 1969. None of the parties had advised the court, and the court was not aware, that appellee Little had died on August 26, 1969, almost two months before. We consider this a dereliction of duty on the part of counsel, particularly since a serious question would have been presented regarding the status of the appeal prior to the rendering of the opinion. This ques-

tion was considered in Galvin v. Shafer, 130 Ky. 563, 113 S.W. 485 (1908). Whether that case would be controlling prior to the rendition of an opinion, we do not decide.

Since the rendition of the opinion, the representatives of appellee Little have filed a motion to substitute another person as a party in his place. On behalf of appellee Little there has also been filed a petition for rehearing. The appellant Deaton has filed a petition for modification and extension of the opinion. The motion to substitute, appellee Little's petition for rehearing, and appellant Deaton's petition for modification and extension, are each overruled.

On the court's own motion, the opinion is modified to provide that the new judgment, to be entered as directed herein, shall require the Board of Election Commissioners to give reasonable notice to the living party to this action and to the attorneys of both parties of the time and place at which the Board convenes to determine by lot which of the two candidates shall be regarded as elected, so that they may be present at such meeting.