## Garland *vs* Denny & Colston.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Practice in Chancery. Warning Order. Traverse.* Case 42.

JUDGE MARSHALL delivered the opinion of the Court. *October 8.*

THIS bill was filed in the Louisville Chancery Court by <span>The case stated.</span> Denny and Colston, setting up debts as due to them from G. Garland, alledged to be a non-resident, and seeking the satisfaction of said debt by attaching in the hands of H. Bolton, of Louisville, and subjecting to sale a female slave, Caroline, alledged to be the property of Garland. Nancy Richardson, representing herself as the mother-in-law, and A. M. Garland, representing herself as the wife of G. Garland, being made defendants, on their petition, resist the sale of Caroline, on the ground of a deed made some years prior to the institution of this suit, by said Nancy, who was the former proprietor, whereby she declared that she loaned Caroline to her daughter, A. M. Garland, during her natural life, and after her death to belong, with her increase, absolutely to her (A. M. G's.) children, but should she die without issue, to be returned, with her increase, to said Nancy, and at her death to belong to her son-in-law, G. Garland. Under this deed, they claimed that A. M. Garland had a separate estate in the slave during her life, which could not be subjected to the debts of her husband, who had no other interest but the remainder limited to him, which as Mrs. Garland had children, would probably never take effect. The non-residence of G. Garland was not denied by these defendants; and he not having answered, a general traverse was filed for him as prescribed by the act of 1837: *Session Acts, p.* 103.

On the final hearing, without any proof by deposition, going to establish either the justness of the complainant's demand, or the alledged fact of his non-residence, the Chancellor being of opinion that the limitations in the deed, after the life estate, were void, and that <span>The Chancellor's decree.</span>

Mrs. Garland took thereby the absolute property in the slave Caroline, which was by law cast upon her husband, decreed that she should be sold as the property of Garland, for the satisfaction of the entire demand set up by the complainants.

To this decree it is objected: 1, That there is no proof of the non-residency of G. Garland. 2, That there is no proof of the debt decreed. 3, That by the deed of Nancy Richardson, a separate estate was given to Mrs. Garland, which could not be subjected to her husband's debts, or if this be not so, that she has nothing more than a life estate, and that the absolute property should not have been decreed to be sold.

In support of the first of these objections, we have been referred to the case of *Calk* vs *Chiles*, 9 *Dana*, 265, which seems to have been understood by the reporter as deciding, that in cases of non-residency, the fact of non-residency when alledged as the ground of the proceeding is put in issue, and must be proved under the general traverse. But upon an attentive consideration of that case, we are satisfied that this point is not and was not intended to be so decided. The failure to prove the alledged non-residence of the defendant, Calk, is indeed mentioned in connection with the general traverse, and as being put in issue by it. But it is evidently thus referred to, not as a fact affecting the jurisdiction of the Court or the validity of the proceeding by attachment, but as affecting the presumption arising from lapse of time, that the complainant's demand had been satisfied. And as the mere fact of non-residence at the time of filing the bill, which would have been sufficient to sustain the proceeding, would have had no tendency to rebut the presumption of payment arising from previous lapse of time, the reference to the alledged non-residence as a circumstance tending to rebut this presumption, shows that the non-residence alledged in the bill and referred to as being put in issue by the traverse, was not merely a non-residence at the time of suing, but one of previous long continuance. The Court does not say that the proceeding itself was defective or invalid, because the alledged non-residence was not proved, but that because neither that fact nor any oth-

er tending to rebut the presumption, &c., was proved, the bill should have been dismissed for want of evidence of the continued subsistence of the demand. Whence it may be inferred that the fact of non-residence, so far merely as it affected the jurisdiction and the validity of the proceeding, was not regarded by the Court when the case of *Calk* vs *Chiles* was decided, as being specially put in issue by the traverse. And this inference is corroborated by the consideration, that while the want of proof of non-residence under the traverse is only referred to as affecting the case on its merits, the whole procedure is said to have been fatally defective for want of an affidavit to the bill as required by statute.

1. There can be no doubt that where the proceeding, by way of Chancery attachment, is resorted to on the ground of the alledged non-residence of the debtor, that fact must be proved in some manner or the proceeding cannot be sustained. But it is material to observe that before the order of attachment is granted, the allegations of the bill must be supported by affidavit, and before making the order of publication against a non-resident defendant, under the former practice, or the warning order under the present practice, some proof of the non-residence of the party, satisfactory to the Court, was and is required. It is upon this proof alone that in the first stages of the proceeding the party is regarded and proceeded against as a non-resident. On this proof the order for his appearance, and afterwards the general traverse in his name are entered; and on this proof his goods are seized, and may, if the Court think it necessary, be sold during the progress of the cause. By the general traverse, the justice of the claim set up against him is undoubtedly put in issue; and the question is, whether, when this is sufficiently established, and the alledged non-residence is not denied by plea or answer, the same preliminary proof of non-residence on which the steps above noticed have been taken, will not support the proceeding throughout, and authorize the Court to appropriate the attached goods or their proceeds, to the payment of an ascertained debt; or whether for want of additional proof of the alledged non-residence, the bill must be dismissed, the attached

*The filing a traverse by the clerk does not so put in issue the fact of non-residence as to require other proof thereof than that which the Court had required to make the order of warning on which the traverse is based.*

goods or their proceeds restored, and the just creditor be turned away to a new proceeding. If the statutes regulating the proceeding have provided that this latter consequence shall ensue upon the failure to make such additional proof, or if, in other words, they have required such proof, there is, of course, no alternative but to give effect to the legislative enactment. But as in the case supposed, whatever damage might result to the debtor from improperly resorting to this particular mode of proceeding, will have resulted from the seizure and detention of his goods, and not from their final appropriation to the payment of his just debt, it would seem that in furnishing guards, deemed sufficient, against the improper seizure of his goods, and against an improper adjudication upon the merits of the claim sought to be enforced, the Legislature had done all that is essential to his safety. And while we might be inclined, if necessary, to aid by construction the efficiency of these guards, we should feel it to be equally our duty, when every object intended to be secured by them is answered, not to diminish by construction the efficiency of the remedy. Since then the danger and the mischiefs of this remedy, in case of a just debt, arise not from the appropriation of the attached goods to the payment of the debt, but from the seizure of the goods, and as the statute under the indemnities which it provides against an improper seizure, authorizes it to be made on the *ex parte* proof of non-residence, and since it provides against an improper adjudication of the debt, not only by requiring proof of it but by allowing seven years for opening the decree, and securing a return of the goods or their value, if the debt should be then shown to have been improperly adjudged, and as, therefore, there seems to be no reason for requiring more proof of the fact of non-residence, to authorize the appropriation of the goods in payment of an established debt, than was required of the same fact to authorize their seizure under a claim of debt, we should not admit the necessity of such additional proof except upon the ground of a plain intimation of the legislative intention to that effect. And this we think is not to be found in the statute.

So far as the question depends upon the mere meaning of words, it arises on the following phrase contained in the 4th section of the act of 1837, (*Ses. Acts p.* 103,) "but on the defendant's failure to answer, the Court shall cause the Clerk to enter a general traverse of the bill and amended bills." And in the case of *Calk* vs *Chiles, supra,* the Court said this general traverse required proof of all the material allegations of the bill and amended bill. It has already been shown that the Court did not then regard the traverse as requiring further proof of the alledged fact of non-residence, as it affected the jurisdiction or form of the proceeding, but only as it affected the merits of the claim; and consequently, they did not mean to refer to it as a material allegation except in this latter view. But the statute says nothing of material allegations, but only prescribes a general traverse or denial of the bill, and may be supposed to have intended by this language, to characterize the defence authorized to be made as a general and not a special one. The allegation of non-residence is certainly material to the maintenance of the remedy, and if denied by plea or answer, must be proved as other facts expressly put in issue. But it is not material to the justice of the claim or the merits of the case. And the denial of this fact, which is only material to the jurisdiction or to the peculiar remedy, being in the nature of a special exception, might well be considered as not being necessarily embraced in the term "general traverse," as used in the statute; or if it be embraced, then as the traverse which is filed, *ex gratia,* and without oath, requires no particular grade or sort of proof, and as the *ex parte* proof of non-residence has already been admitted as sufficient to establish that fact so far as to authorize the attachment, the warning order, and the traverse, all founded upon its assumed existence, and which together constitute all that is peculiar in the proceeding. Should not that *ex parte* proof which stands upon the record, be deemed, and is it not in truth, made *prima facie* evidence of the fact of non-residence sufficient to support the proceeding throughout, unless it be denied under oath? We are disposed to think this question should be answered in the affirmative. And we refer not only to

GARLAND
*vs*
DENNY & COLSTON.

the case of *Calk* vs *Chiles* as tending to support this con-clusion, but also to the case of *Lackey* vs *Hill*, (9 *Dana*, 81,) as having by analogy, some bearing in its favor. But further, the traverse being founded upon the assumed non-residence of the party for whom it is filed, there is an apparent incongruity in supposing it to have been in-tended to deny or put in issue the very fact, on the as-sumption of which alone it was filed, and which had al-ready been sufficiently proved to authorize the filing of it for him as a non-resident.

Again, the statute of 1837, evidently intended to sub-stitute the traverse and the proof required under it in the place of the publication of the order for appearance of the defendant, and the taking of the bill for confessed, on his failure to appear in obedience to the order. And there is no ground for supposing that it was intended to require, under the traverse, more proof than was previ-ously understood to be furnished by taking the bill for con-fessed. But to say that the fact of non-residence, with-out which the bill could not have been taken for confes-sed, was to be proved by taking the bill for confessed, or that it was better proved by the defendants' failure to an-swer the bill than by that evidence on the ground of which he was called on to answer under pain of having the bill taken for confessed, would be attributing greater effect and certainty to the consequence than to the premises, great-er strength to the superstructure than to the foundation. There seems to be no other alternative but to say that the proof of non-residence, on which the order of publica-tion and the consequent order taking the bill for confes-sed were founded, was the only actual proof of the fact, and that as no additional proof was immediately furnished by the order taking the bill for confessed, so no addition-al proof should be understood as being required under the traverse.

There is moreover, in the fourth section of the act of 1837, which introduces the general traverse, intrinsic evi-dence that the Legisluture had particularly in view in pre-scribing this change in the mode of providing against alledged non-resident debtors, the object of producing a better security against an improper adjudication of the

debt or demand, for the section proceeds immediately to direct a jury to be empanneled in certain cases to liquidate the claim and to ascertain such other facts as may be necessary for a final decision. And as there is no direct evidence of an intention to require further proof of the alledged non-residence of the debtor or of any other fact affecting merely the jurisdiction, we feel authorized under the views above presented to conclude that in prescribing the general traverse, the Legislature did not intend to require such proof. The first objection to the decree cannot therefore be sustained.

2. As, for the reasons already given, the traverse being a simple denial requiring no particular grade of proof, may be sufficiently answered by mere *prima facie evidence*, we are of opinion that the notes set up in the bill having been read without objection must be regarded as sufficient to establish the debt so far as it is evidenced by them. And we are inclined to the opinion that the traverse, not being on oath, should not be deemed equivalent to a plea of *non est factum*, and therefore does not require proof of the execution of a note set up in the bill. A contrary determination would subject the remedy to a great and onerous inconvenience, in most cases certainly unnecessary. The statute requiring the denial of a note in ordinary actions to be supported by oath, is founded on and establishes the legal presumption that such an instrument has not been forged. And as there is nothing in this statute of 1837 doing away the presumption, we think it should prevail against the general traverse in favor of a note exhibited and relied on in the bill. But as there is no presumption in favor of an open account, which the traverse certainly denies; and as a part of the debt decreed in this case was founded on an open account, of which there was no proof, the decree is to that extent, unauthorized by the evidence, and therefore erroneous.

3. With regard to the deed and the rights and property which vest under it,—we are of opinion that it does not profess, and cannot be construed as giving a separate estate to Mrs. Garland, but that it simply gives to her the slave for life, with remainder to her children at her death; and should she die without issue remainder over; what-

---

GARLAND
*vs*
DENNY & COLSTON.

Notes exhibited in a bill in Chancery against one alledged to be a non-resident without objection, should be regarded as evidence of a debt, so far as evidenced by them, the general traverse not being on oath is not sufficient to put the complainant to the proof of their execution. But accounts exibited and relied on must be proved.

A remainder after an estate for life in slaves by deed is not void, and if the life estate be granted to a *feme covert* vests only the life estate in the husband.

ever estate she took being an immediate legal interest, vested in her husband and is liable for his debts. But we do not concur in the opinion of the Chancellor, that the remainders attempted to be limited, after the estate for life, are void—and therefore, we do not admit that the intended life estate was, in law, a fee simple or absolute property. Although by the ancient common law, such attempted limitations of a chattel, after a life estate were void, and the gift for life, or even for an hour, of a chattel, was a gift forever; this doctrine has long since passed away, and such limitations over, not only by will, but by deed also, were well established before the enactment of our statute of 1798, putting slaves in this respect, on the footing of chattels at common law. The validity of such remainders was expressly decided by this Court in the case *Keen and Macy* vs *West* (3 *Bibb*, 39,) and has been often expressly or tacitly recognized since. Nor are the limitations created by this deed void, under the principle which prohibits the creation of a perpetuity, for they are all to take effect within a life in being: *Moore's trustees* vs *Howe's heirs,* (4 *Monroe,* 199.) Nor are they void as creating an estate tail in a chattel: (*Same case.*)

It follows that Mrs. Garland took only a life estate by the deed, and that her husband has not, in virtue of his marital rights, any greater interest than for the life of his wife; which interest, together with the contingent remainder, limited to him by the deed, is all the estate, or property, or interest, that he has in the slave.

The decree is, therefore, erroneous in subjecting the slave to sale for the debt of G. Garland as his absolute property, and for this error, and for the excess in the sum decreed beyond the amount of the two notes set up in the bill, the decree is reversed and the cause remanded for a decree to be rendered in conformity with this opinion.

*Loughborough* for appellant: *W. Morris* for appellees.