# Johnson v. Hall.

(Decided Nov. 15, 1938.)

EDWARD L. ALLEN and C. B. WHEELER for appellant.

JOE HOBSON and J. B. CLARKE for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming in part and reversing in part.

The parties to this appeal were rival candidates for the office of magistrate in magisterial district No. 3 of

Floyd county at the regular November election in 1937, Martin Johnson being the nominee of the Republican party and Willie Hall the nominee of the Democratic party. On tabulation of the returns by the County Board of Election Commissioners, it appeared that Johnson had received 1637 votes and Hall 1534 votes. Some independent candidates also received a small number of votes. A certificate of election was issued to Johnson and thereafter Hall instituted this contest proceeding against him alleging that he had violated the Corrupt Practice Act, Kentucky Statutes, section 1565b-1 et seq., and also asked that the Melvin and Weeksbury precincts be thrown out because of the illegal and irregular manner in which the election was conducted therein.

By answer Johnson controverted the allegations of the petition and by way of counter-contest alleged that Hall had violated the provisions of the Corrupt Practice Act and that because of illegality and irregularity in the conduct of the election in Burton and Jacks Creek precincts the vote in those precincts should be disregarded and thrown out. Hall entered a motion to strike from the answer the paragraphs setting up countergrounds of contest on the ground that the answer was not also designated "and counterclaim" and without waiving such motion filed reply controverting the affirmative allegations of the answer.

After something over 1600 pages of proof had been taken, the chancellor rendered an opinion and judgment in which he said in effect that the proof to show violation of the Corrupt Practice Act by either of the parties was unsatisfactory and insufficient to sustain the allegations of the respective pleadings in that particular, but adjudged that because of the irregularities in the Melvin precinct it should be thrown out and the vote disregarded. He further gave as his opinion that the election in Burton and Jacks Creek precincts was in violation of law and that it was impossible with any degree of accuracy to ascertain the result of the legal votes cast in those precincts and that they should be disregarded and not counted for either party. However, he sustained Hall's motion to strike from the answer the paragraphs setting up countergrounds of contest for the reasons set forth in the motion and held that the failure of Johnson to put in the caption of his answer the words "and counterclaim" precluded him from obtaining re-

lief as to the Burton and Jacks Creek precincts. It was adjudged that Hall had received a majority of the legal votes cast and was entitled to the office and the emoluments thereof. Johnson has prosecuted this appeal and a motion of Hall for a cross appeal has been sustained and the cross appeal granted; however, a motion of appellant to set aside the order of submission and to set aside the order granting the cross appeal and to overrule appellee's motion for such cross appeal has been passed to the merits.

The basis of the motion which has been passed to the merits is that appellee failed to execute a supersedeas bond under section 1596a-12, Kentucky Statutes, as construed in the late case of Campbell et al v. Combs, 273 Ky. 404, 116 S. W. (2d) 955, but we deem is unnecessary to determine the question of appellee's right to maintain a cross appeal. On the original appeal the judgment may be affirmed on any sufficient ground manifested by the record even though the chancellor may have based his judgment and finding on different or even erroneous grounds.

It is argued by counsel for appellant that the chancellor erred in sustaining appellee's motion to strike from the answer the paragraphs setting up countergrounds of contest. The chancellor expressed a doubt concerning the correctness of his ruling upon that motion but concluded that the question was governed by the provisions of subsection 4 of section 97 of the Civil Code of Practice, and referred to the holding of this court that one of two defendants may contest the election of the other by way of cross petition. In Huff et al. v. Black, 259 Ky. 550, 82 S. W. (2d) 473, an election contest case, it was held that where a defendant desires to commence an action against a co-defendant which affects or is affected by the original cause of action, he must designate his pleading a cross-petition and have summons issued thereon in order to bring his codefendant into court in the new action.

Section 1596a-12, Kentucky Statutes, which prescribes the procedure to be followed in election contests of this character provides in substance and effect that within 20 days after service of summons upon the contestee he shall file answer "which may consist of a denial of the averments of the petition and may also set up grounds of contest against the contestant, and if such

grounds are so set up they shall be especially pointed out * * *." The answer in this instance was in conformity with the provisions of the statute relating to the nature of the answer that may be filed by a contestee and it is our conclusion that the nature and form of the pleading in the circumstances is governed by the Statute and not by the Code. Therefore the motion to strike from the answer appellant's ground of contest against appellee should have been overruled.

Coming to the question of irregularities in holding the election in the precincts called in question and to the use of money and other things to corrupt and bribe voters, we find it would be impossible to go into detail or to do more than generalize concerning the substance and effect of the evidence of witnesses concerning these matters.

Counsel for appellee admit that they failed to sustain their allegations concerning irregularities in holding the election in the Weeksbury precinct. The evidence shows that for some reason the election was not held in the designated place in the Melvin precinct and where the elections were usually held. After the officers had assembled in the usual place they repaired to a school building in which there were three or more rooms. The election officers occupied one large room. No voting booths were set up in this room but when ballots were issued to voters they went to an adjoining room to mark them. There were no voting booths in this room and stencils and pads were placed on desks at various points. The door between the rooms was closed except when voters were entering or leaving the room. As many as six voters would be in this room at the same time and it is shown that it was possible for one voter to see how others marked their ballots and in fact in a numbe of instances this did happen and some voters even marked the ballots for other voters.

In arguing that the chancellor erred in throwing out and disregarding the votes in the Melvin precinct his counsel cite and rely on the case of Jones v. Steele, 210 Ky. 205, 275 S. W. 790. In that case the election was held in a school room where no election booths had been provided and the voters were allowed to mark their ballots on the top of school desks located on either side of the election officers and at a distance of 9 to 12 feet. It was held that secrecy of the ballot was not violated to

such an extent as to require the votes to be thrown out. In that case the voting was done under the observation of the election officers but neither they nor others in the room could see how the voter was marking his ballot. But in the Melvin precinct the voters were permitted to go into another large room and out of the observation of the election officers and without any safeguards whatever thrown around the secrecy of the ballot and there is evidence that some voters were permitted to remain in the room for an hour.

This court has consistently held that an election should not be set aside for trivial or inconsequential reasons nor where there has been a substantial compliance with the requirements of the election law. But here there was no attempt to comply either with the letter or spirit of the law respecting the secrecy of the voting, therefore the case is easily distinguished from the case cited and relied on.

In the Melvin precinct appellant received 195 votes and appellee 56, according to the face of the returns, and with the vote in this precinct thrown out, appellee was left with a majority in the remainder of the precincts. In the Burton precinct appellant received 30 votes and appellee 154 and in the Jacks Creek precinct appellant received 48 votes and appellee 214. The evidence shows that in the Jacks Creek and Burton precincts irregularities were as great and in many respects greater than in the Melvin precinct. In one or both of these precincts voters were permitted to go into a room adjoining the one where the election officers were to mark their ballots. In some instances election officers and others were in this room while voters were marking their ballots. There is some evidence that liquor was kept and passed around in the voting places. When the ballot boxes were opened numbers of ballots were found folded together and there is evidence of extensive alphabetical voting and some voters whose names appeared on stubs testified that they were not present at the election and did not vote.

The judgment of the chancellor with respect to the Melvin precinct is fully sustained by the evidence and his conclusion that the voting in Jacks Creek and Burton precincts should, under the evidence, be thrown out and disregarded, although for reasons indicated he did not so adjudge, finds equal support in the evidence.

There is evidence that appellant and his close relatives, friends and adherents used money to influence voters, although he denied the statement of practically all of the witnesses concerning the use of money or that any was used with his knowledge and consent. He admitted that he gave $10 to one man but that this was a gift and not to be used in the election; that this man asked him for a drink and that he told him he had none but gave him $10. He testified that this man was truthful and reliable, but the voter to whom he gave the money testified that the night before the election appellant gave him an envelope containing ten one dollar bills and he further testified that on this occasion appellant asked him where he could find some other parties who testified that appellant also gave them an envelope containing a number of one dollar bills. One witness who was working for appellant on the election day testified that he had $75 or $80 with him at the polls, practically all of which he spent to influence voters, but he stated that this was his own money and that he had no arrangements with appellant to be repaid. There is other evidence of wide-spread use of money by friends, adherents and political associates of appellant and in such circumstances as would leave no escape from the conclusion that he knew it was being used in his behalf as well as that of other candidates on the ticket with him; that in fact he contributed money to be so used. There is evidence that appellee gave out information as to persons who would be using money for him and other candidates of his party; that he was seen to meet voters coming from the polls and to give money to some and to walk away into more or less secluded places with others; that money was used by his relatives, close friends and political adherents in such circumstances as would indicate that he had knowledge of all the facts.

The vote in the three precincts which we have indicated should be thrown out composes practically 30 per cent of the entire vote cast in magisterial district No. 3. Where such a large percentage of the votes must be thrown out because of irregularities, corruption, bribery, etc., and it is impossible to determine that one candidate received a majority of the legal votes cast, the election should be declared void. Scott v. Roberts, 255 Ky. 34, 72 S. W. (2d) 728. Furthermore since the evidence conclusively shows that both appellant and appellee violated the Corrupt Practice Act, neither of them should

be declared elected but the election should be held void for that reason, Kentucky Statutes, 1565b-11, and cases cited thereunder. What we have already said renders it unnecessary to discuss any other grounds argued by either party.

Wherefore the judgment is affirmed as to appellant but reversed as to appellee, with directions to enter judgment in conformity with this opinion.