## Lakes v. Estridge.

June 11, 1943.

656

A. T. W. Manning for appellant.

J. R. Llewellyn for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

At the November, 1942, general election, the appellant and the appellee were rival candidates for the office of member of the Jackson County Board of Education from Educational Division No. 3 composed of voting precincts 2, 3, 4, 5, and 6 of Jackson County. In three of the precincts, 2, 5, and 6, the election officers were supplied with ballots on which were printed the names of Phee Hillard and Green Lakes as the opposing candidates. Hillard and Green Lakes were the candidates in Educational Division No. 4, and, according to the testimony, the mistake was made by the printer. It was not discovered until the morning of the election, and in Precinct No. 6 the election officers attempted to correct it by striking out the names of Hillard and Green Lakes and writing in place thereof, in pen and ink, the names of Estridge and James Lakes, except in a few instances where a voter objected and insisted upon correcting his own ballot. In Precincts 5 and 2 the voters were informed of the mistake as they received their ballots, and instructed by the election officers to write on the ballot the name of the candidate for whom they desired to vote. For illiterate voters this service was performed by the election officers. In the five precincts the total of the votes counted for appellant was 396, and the total counted for appellee, 215. Appellant accordingly was awarded the election certificate, and this election contest was instituted by appellee for the purpose of having it adjudged that there was no election. Appellant demurred on the ground that the allegations of the petition did not show that appellee was entitled to the office, and that only the Attorney General, by quo warranto proceedings, could maintain an action to oust appellant from the office. Upon the demurrer being overruled issues were joined and proof taken, at the conclusion of which the

Chancellor adjudged that no legal election had been held, and that the office was vacant. This appeal is from that judgment.

Since appellee had been nominated as a candidate for the office in the manner prescribed by KRS 160.220, K. S. 4399-25, his right to maintain an action to have the election vacated is too well settled to admit of argument. Brandenburg v. Hurst, 290 Ky. 592, 162 S. W. (2d) 223. It would also seem apparent that the Chancellor was correct in his conclusion that since no legal ballots had been furnished to the voters of three out of the five precincts comprising the Educational Division, the voters in these precincts must be regarded as having been disfranchised, and that the percentage of those disfranchised was so great as to require the Court to adjudge that the election had not been "free and equal" within the requirements of Section 6 of the Constitution. The total number of registered voters in the five precincts was 1,300, and of these, 503 resided in Precincts 2, 5, and 6. As before indicated, the total number of votes cast in the Educational Board race was 611, of which, 396 were counted for appellant and 215 were counted for appellee. The count showed that appellant had received 188 votes and the appellee, 93 votes, in Precincts 2, 3, and 6. Thus it is possible to show that with the votes counted for appellant and appellee in Precincts 2, 5, and 6 eliminated, appellant still had a majority, 208 to 122.

It is argued by appellant that since it was not shown that any fraud was intended or committed and the voters were afforded a means of expressing their choice, and did, in fact, express it, no harm resulted from the failure of the clerk to furnish ballots with the names of the proper candidates printed thereon. This argument is plausible, but to uphold it would require us to nullify, in effect, the strict requirements of not only the Statute above cited relating to school elections, but provisions of the general election law, including those which relate to the manner in which the illiterate must vote, and the methods by which the secrecy of the ballot must be preserved. It is also contended that the clerk was warranted in inserting the names of the real candidates with pen and ink by KRS 118.200, KS 1464, which directs the election clerk to use "pasters" in substituting on the ballots the names of candidates to take the place of those who have died, resigned, or who have been removed; a

contention obviously unsound. The right to have one's name printed on a ballot as a candidate is a valuable right zealously safeguarded by the Statutes and the decisions of this Court, and one not to be lightly disregarded. In school elections, the order in which the names of the candidates are printed must be rotated at intervals in the printing of the ballots so that no one candidate may obtain an advantage by the position his name occupies. Furthermore, to uphold the validity of this election would be to open wide the door to fraud, since it would place it within the power of unscrupulous election officers to largely influence the result. The Chancellor in his opinion cited the case of Hocker et al. v. Pendleton, 100 Ky. 726, 39 S. W. 250, in which we said:

"It is clear, however, that an election may be free from violence, and yet, if from a failure of the officers to supply ballots, booths, stencils, etc., any large proportion of the electors is prevented from voting, it can properly be said there has not been a free election, within the meaning of the constitution."

Appellant insists that the present case falls within the modified rule stated in the case of Wallbrecht v. Ingram, 164 Ky. 463, 175 S. W. 1022, 1028, to the effect that an election should not be set aside if the irregularities were not sufficient to affect the result. However, since we must treat the ballots counted in Precincts 2, 5, and 6 as wholly invalid and insufficient to indicate whom the voters who cast them would have chosen had they been furnished with ballots showing in print the names of the nominated candidates, it may well be said that this case is within the following rules stated in the Wallbrecht case:

"If the number of voters that were prevented from voting by fraud, bribery, violence, mistake of the election officers, or imperfection in the law would be sufficient to change the result if they had been cast for the minority, then the election should be set aside upon the ground that it could not be determined with certainty that the result, as certified to by the canvassing board, represented the will of the majority. A like conclusion should be reached if the bribery, fraud, intimidation, or other cause, whatever it may be, has affected the election to such an extent that it cannot be determined, by any rea-

sonable method, for which side a majority of the legal votes were cast.''

This conclusion renders it unnecessary for us to pass upon the sufficiency of appellant's nominating petition, which was also attacked as an additional ground of contest.

Judgment affirmed.