Charles B. UPTON, Appellant,

v.

Denver KNUCKLES et al., Appellees.

Court of Appeals of Kentucky.

Sept. 21, 1971.

Dissenting Opinion Sept. 24, 1971.

W. L. Rose, Williamsburg, Hubert F. White, Glenn W. Denham, Middlesboro, for appellant.

Emby A. McKeehan, Williamsburg, James S. Wilson, Pineville, for appellees.

CULLEN, Commissioner.

At the May 1971 primary election Charles B. Upton and Denver Knuckles were candidates for the Republican nomination for State Senator for the Seventeenth Senatorial District. The official canvass of the vote showed that Knuckles was the winner, receiving 3321 votes to Upton's 3298, a mar-

gin of 23. In the Straight Creek #4 Precinct in Bell County Knuckles received 82 votes and Upton 37, a margin of 45.

Upton brought the instant suit to contest the election. The relief he sought was that all of the votes in Straight Creek Precinct be declared void and the votes received by each candidate in that precinct be deducted from the respective candidate's totals; and that Upton be declared the winner on the basis of the remaining votes (he then would have a winning margin of 22 votes). The circuit court entered judgment dismissing the complaint on the ground that it failed to state a claim on which relief could be granted. Upton has appealed from that judgment.

The circuit court apparently interpreted Watts v. Fugate, Ky., 442 S.W.2d 569, as holding that a precinct can never be thrown out, for illegality in the conduct of the election therein, and the results of the election determined by the votes in the remainder of the election territory. Watts v. Fugate does not so hold.

In substance, the holding in Watts v. Fugate was simply that the "20 percent rule" has reference to 20 percent of the total votes in the election and not to 20 percent of the votes in a single precinct. The rule as clarified by Watts, or otherwise, has no bearing on the instant case, because the rule has no application in determining whether certain votes are in fact illegal; nor in cases where it can be determined for whom the illegal votes were cast.

In the instant case, Upton undertakes to assert that all of the votes in Straight Creek Precinct were void—illegal—because the laws governing the conduct of elections were violated to such an extent that it must be considered that there was in substance no election in the precinct. He does not attempt to say that at least 20 percent of the votes in the precinct were illegal and therefore the rest of the votes therein should be thrown out; he says that all of the votes are illegal by reason of the conditions under which the election was held.

■ Obviously, if all of the votes in a particular precinct are declared to be void, it can be determined for whom the illegal votes were cast, because every vote received by each candidate was an illegal vote. In such a case there is no necessity for the complaint to name each alleged illegal voter and how he voted, because the proof will not be addressed to individual illegal votes, but to the general course of conduct of the election. To the extent that Gregory v. Stubblefield, Ky., 316 S.W.2d 689, and the cases cited therein require the complaint to name the illegal voters where it is alleged that for some reason or reasons affecting the election itself as distinct from the individual votes, all the votes were illegal, they are overruled.

If it should be determined that the election in Straight Creek Precinct was in substance no election at all, wherefore all of the votes cast therein should be considered void, the question would remain whether the result of the election could properly and fairly be determined on the basis of the votes in the remaining portions of the election territory, or whether the entire election should be declared void. It would seem that the answer to that question should depend on whether the number of votes in the voided precinct, in relation to the total number of votes cast in the election, is so substantial that the election cannot be considered to have been free and equal. See Wallbrecht v. Ingram, 164 Ky. 463, 175 S.W. 1022; Hocker v. Pendleton, 100 Ky. 726, 39 S.W. 250; Lakes v. Estridge, 294 Ky. 655, 172 S.W.2d 454. Here the principle is the same as in the "20 percent rule"—it is not enough merely that the number of voided votes be sufficient to have affected the mathematical outcome of the election; in addition the voided votes must be a substantial proportion of the total votes cast in the election. It appears that not only the same principle, but the same

measure of substantiality—20 percent—may be used for this purpose.[1]

The relief sought by Upton in the instant case is the kind of relief that was envisioned in Thurman v. Keen, Ky., 444 S.W.2d 754, as being invocable under appropriate facts, and the kind that was invoked in such cases as Herald v. Turner, 237 Ky. 827, 36 S.W.2d 623 and Johnson v. Hall, 275 Ky. 395, 121 S.W.2d 935. It is indistinguishable on logic from the relief frequently granted where absentee ballots are sought to be invalidated in toto because of violations of the laws governing their treatment. See Arnett v. Hensley, Ky., 425 S.W.2d 546, and Hale v. Goble, Ky., 356 S.W.2d 33.

▇▇▇ For the reasons hereinbefore stated, we conclude the law to be (1) that the vote of a precinct can be thrown out for irregularities in the conduct of the election therein of such magnitude as effectively to destroy any hope that the results as tabulated were a fair indication of the sense of the voters in that precinct and (2) that the result of the election can be determined on the basis of the votes from the remainder of the election territory unless the number of votes in the voided precinct constituted a substantial portion (20 percent or more) of the votes in the entire territory. In the instant case the votes in the senatorial race in Straight Creek Precinct were less than two percent of the total votes in the district, so it would be proper to determine the result of the election on the basis of the remainder of the votes if Straight Creek Precinct were thrown out.

The question remains of whether Upton's complaint sufficiently alleged grounds for the relief he sought. In approaching that question it is necessary that we determine to what extent "notice" pleading as contemplated by the Civil Rules is acceptable in election contest cases.

Our previous cases have adhered strictly to the rule that where specific votes are attacked as illegal the name of each alleged illegal voter and the candidate for whom his vote was cast must be set forth in the complaint, the Civil Rules to the contrary notwithstanding. See Napier v. Noplis, Ky., 318 S.W.2d 875; Hodges v. Hodges, Ky., 314 S.W.2d 208. But with that one exception, there has been no clear-cut position expressed on the acceptability of "notice" pleading in contest cases. It is true that in Napier v. Noplis, supra, the statement was made that in election contest suits specific pleading is required whenever possible and general charges are not welcomed. On the other hand, this court has held that violations of the Corrupt Practices Act may be alleged in general terms; Kelley v. Barlow, 287 Ky. 680, 155 S.W.2d 10; Goad v. Jackson, 270 Ky. 92, 109 S.W.2d 17; that precision of pleading is not required, certainty to common intent being sufficient; Siler v. Brown, 215 Ky. 199, 284 S.W. 997; and that because of the haste required in preparing contest suits technical objections to pleadings should be disregarded and the pleadings should be given a rational construction according to their general scope and tenor; Pickard v. Jones, Ky., 243 S.W.2d 46.

CR 1 provides that the Civil Rules shall apply to procedure and practice in special statutory proceedings except to the extent the rules are inconsistent or in conflict with the statute. Various provisions of the rules have been held applicable to election contest cases. See Deaton v. Little, Ky., 452 S.W.2d 384.

▇▇▇ We see no valid reason why pleadings in election contest cases should be held to requirements of specificity not applicable to other civil actions. If the defendant is given notice by the pleading of what kind of a ground of contest is being asserted,

---

1. We emphasize that this measure does not apply in determining whether there has been such an extent of illegality in the conduct of an election *in a precinct* as to warrant declaring the election *in* *that precinct* to be void; in making that determination the court simply must weigh the overall fairness of the election in the precinct. Cf. Thurman v. Keen, Ky., 444 S.W.2d 754.

that should be sufficient for pleading purposes, and if the defendant desires more information he has all of the resources of discovery plus the privilege to ask for a more definite statement.

With the foregoing considerations in mind we examine Upton's complaint. The significant portions of the complaint are as follows:

"(4) Contestant-Plaintiff alleges that on May 25, 1971, at Straight Creek Precinct Number 4, Bell County, the election laws of the Commonwealth of Kentucky, as set out and prescribed in KRS 118.330, Sub-sections 1, 2, 3 and 4, were violated by:

(a) Allowing unauthorized and illegal persons to be inside the polling place during balloting.

(b) By allowing Election Officers to electioneer within the polls during balloting.

(c) By allowing unauthorized and illegal personnel to electioneer inside the polling place during the balloting.

(d) By allowing unauthorized persons to converse with others concerning their support or non-support of candidates inside the polls during balloting.

"That same were so violently and flagrantly violated as did have the effect of rendering all of the votes cast in said race void. That the acts and unlawful manner in which the election was conducted at the aforesaid precinct did so wrongfully influence, intimidate, coerce and otherwise change the conditions of the balloting at this precinct, and did cause the election processes of this precinct to be so tainted and unfair as to make the results of the voting at said

place to be illegal, void and not capable of being counted in reckoning the final results of this Republican Primary Election.

"(4–a) He alleges that on May 25, 1971, at Straight Creek Bell County, Precinct No. 4 the Election Laws of the Commonwealth, as set out in KRS 125.-140, Sub-section (2) relating to assisting persons in voting, was violated as follows:

(a) A great number of persons were allowed to be assisted in voting without making an oath as to the disability of each;

(b) That a great number of persons were allowed into the mechanical voting machine accompanied by one person, when the law required first the oath and accompaniment of the two election judges. That KRS 125.140(2) was violated in such a way as to bring about such fraud and gross impropriety in the conduct of the election that a large proportion of the votes cast were done so illegally, and did thereby make it impossible to determine how the votes were cast so as to charge them to the proper recipient, and therefore the election in said precinct should be voided.

\* \* \* \* \* \*

"(6) That there was such violations of KRS 118.330 and KRS 125.140(2) in the Straight Creek Precinct No. 4, Bell County, and such wrongful conduct in holding said election therein that the results thereof cannot be fairly and reasonably determined with any degree of certainty, and that this Court should declare the election results of said precinct void, and should adjudge that no proper and legal election was held in the Senator's Race in said precinct on May 25, 1971."[2]

---

2. The allegations set forth in paragraph (–a) and (6) above would not of themselves be sufficient to state a claim for relief, because they set forth simply individual instances of illegal voting as to whether a complaint must name each il-

legal voter. However, these allegations may be considered with the others as undertaking to show an overall picture of such extensive misconduct of the election as to warrant a finding that there was no valid election in the precinct.

■ It will be observed that the complaint alleges squarely that the election laws in the conduct of the election in Straight Creek Precinct were "so" violated as to cause the election therein to be void. The *kinds* of violations are set forth. The only deficiency that might be charged is that the general allegation of law violations so extensive as to render the election void is a mere *conclusion* and is one not warranted by or properly drawn from the specific violations enumerated.

The problem of distinguishing "facts" from "conclusions" was designed by the Civil Rule concept of "notice" pleading to be minimized if not completely eliminated. We see no reason why the problem should be perpetuated in election contest cases by continuing to apply ancient rules of pleading.

Certainly, if Upton had alleged, as to each of the specific kinds of statute violations, that the extent of the violations was such as to directly affect practically every voter, his complaint would be considered sufficient. We think that his general allegations, following the enumerations of the kinds of violations that occurred, does not fall far short of saying the equivalent of the above. In the election contest case of Pickard v. Jones, Ky., 243 S.W.2d 46, p. 50, we said, "Where the pleading is open to construction, a meaning which will reasonably support it should be adopted rather than one which will defeat it."

■ It is our conclusion that the allegations of Upton's complaint are sufficient to state a claim upon which relief could be granted. However, we caution that evidence merely of some irregularities of the kind mentioned in the complaint will not be enough proof to sustain the claim for relief. The proof must be of such flagrant, extensive, and corrupt violations as to destroy the fairness and equality of the election. See Hodges v. Hodges, Ky., 314 S.W.2d 208; Burchell v. Smith, Ky., 262 S.W.2d 365. It is only in the most flagrant kind of case that voters will be disfranchised for illegal acts of the election officials. See Thurman v. Keen, Ky., 444 S.W.2d 754.

The judgment is reversed, with directions for further proceedings in conformity with this opinion.

MILLIKEN, C. J., and EDWARD P. HILL, Jr., PALMORE, REED and STEINFELD, JJ., concur.

OSBORNE, J., concurs in part and dissents in part.

NEIKIRK, J., not sitting.

OSBORNE, Judge (dissenting).

I find myself compelled to dissent from the majority opinion in this case for several reasons.

First, the right to contest a primary election in this state and the procedures to be followed in the contest are specifically set out by statute. Nowhere in the majority opinion is that statute mentioned.

Second, the statute specifically provides the remedies that can be afforded by a court in a contest of a primary election. The majority opinion does not comply with the statutory limits and in fact grants a remedy different from that set out in the statute.

The contest of primary elections is covered by KRS 122.010, etc. As these statutes contain much material which is not relevant to this particular case, I will hereby set them out in an abbreviated form quoting that material which is relevant. KRS 122.020 provides:

"Any candidate for nomination to office at a primary election held under the provisions of KRS 119.010 to 119.990, for whom a number of votes was cast equal to not less than fifty percent of the votes cast for the successful candidate for nomination to such office, may contest

the right of the successful candidate, and of any other candidate for nomination to such office, to such nomination, by filing a petition in the circuit court within fifteen days from the day of the primary election, stating the specific grounds relied upon for the contests, * * * The contestee shall file his answer within ten days after service of summons. The answer may contain grounds of contest in favor of the contestee * * * but the grounds must be specifically set out. * * * No ground of contest by either party shall be filed or made more definite by amendment after the expiration of the time allowed by this section for filing the original pleading. * * * the clerk shall immediately docket the cause and notify the presiding judge of the court that the contest has been instituted, and the judge shall proceed to a trial of the cause within five days after the issue was joined."

KRS 122.030 provides:

"Each party to a contest instituted under KRS 122.020 shall be entitled, in the production of evidence to be used on the trial thereof, to all the remedies allowed in cases of law and in equity. In trying the contest the court shall hear and determine all questions of law and fact without the intervention of a jury, * * * If it appears from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election *that neither contestant nor contestee can be adjudged to have been fairly nominated, the court may adjudge that there has been no election, in which event the nomination shall be deemed vacant."* (Emphasis added).

Three things are made abundantly clear from the foregoing statutes: 1. A contestant must state specific grounds upon which he relies for the contest and these cannot be amended after time for filing the pleading has expired. 2. If it appears from the record before the court that because of fraud, intimidation, bribery or violence it cannot be fairly determined who was the winner of the election, the court has the power to adjudge that there has been no election. 3. By inference from number two, if the court can declare who has been the winner of the primary it will do so. Of course, in order to do this it must be able to accurately determine who received the greater number of valid votes cast.

In my judgment the majority opinion misses on two points. The contestant did not specifically allege the grounds upon which he relied to contest the election and the opinion itself in remanding the case does not restrict future proceedings to those authorized by the statute. The majority opinion states:

"* * * it is not enough merely that the number of voided votes be sufficient to have affected the mathematical outcome of the election; in addition the voided votes must be a substantial proportion of the total votes cast in the election."

This rule is diametrically opposed to the statute, as the statute only requires that the court be unable to determine who fairly won the election. Therefore, the invalid votes in number would only be required to be sufficient to make the rightful outcome in doubt. This court, as it has done in so many other instances, has completely rewritten the statute and in doing so has stated, restated and retracted on so many various rules that no one can read our cases and formulate any intelligent conclusion concerning the position of the election laws in this state. The so-called "20 percent rule" which has attempted to be watered down in this opinion was so rigidly applied in Gregory v. Stubblefield, Ky., 316 S.W.2d 689, that a member of the United States Congress was unable to get his complaint before this court. His complaint contained allegations in much greater specificity than the one presently before us.

My analysis of the total election contest laws of this jurisdiction leads me to believe that there are only four procedures that can

be followed: 1. An action for recount of the votes. In this process the judiciary merely recounts those votes cast and if the vote is valid upon its face it is counted, otherwise it is not. The only discretion within the power of the judiciary in this procedure is to determine whether or not a vote is valid upon its face and for whom it was cast. 2. An action to eliminate named and specified votes because they were illegally cast. In this type procedure the court may hear evidence and determine for whom the vote was cast and if it was illegally cast. In this proceeding the court will deduct from the total of the candidate those votes shown to have been illegally cast for him and at the termination of the proceeding will declare which candidate received the greater number of valid votes. 3. Proceedings to declare a nomination or election invalid because of violations of the Corrupt Practices Act. Here the court may determine if there has been sufficient violation of the Act to declare a nomination invalid. 4. Proceedings such as the one we now have before us where it is alleged that because of fraud, intimidation, bribery or violence in the conduct of the election that it cannot accordingly be determined which candidate received the largest number of votes. In this instance, if it cannot be determined which candidate received the largest number of votes, then the entire election must be cast out. The only relief authorized by KRS 122.030 is to declare the nomination vacant.

For the foregoing reasons I believe the majority opinion is clearly wrong. First in not dismissing the complaint because of failure to specifically allege the invalid acts. Second in remanding the case requiring the voided votes to be *a substantial portion of the total vote*. I think it enough that the invalid votes were sufficient to leave the rightful outcome in doubt.

When a statute under which the court is acting limits the relief to declaring the nomination vacant, certainly the court has no authority to invalidate the vote of one precinct and declare one party nominated.

I realize that in order to reach this result one would have to overrule a long line of cases. I think they are wrong.

For the foregoing reasons, I dissent.