Warren B. MILLER, Appellant,

v.

Will Tom WATHEN, Appellee.

Court of Appeals of Kentucky.

Oct. 17, 1975.

Carroll W. Morrow, Moore, Morrow & Frymire, Madisonville, Tommy W. Chan-

dler, Providence, William E. Mitchell, Miller & Mitchell, Dixon, for appellant.

William S. Greenwell, Westberry & Roberts, Marion, George L. Drury, II, Tom D. Harris, J. Quentin Wesley, Ruark & Hulette, Morganfield, for appellee.

STEPHENSON, Justice.

This contest case arises out of the Democratic primary election for the office of circuit judge of the 5th judicial district. A total of 5,021 votes were cast for the office of circuit judge. Will Tom Wathen received 2,516 votes and Warren B. Miller received 2,505 votes, a majority of 11 votes for Wathen. The trial court granted a judgment dismissing the contest suit filed by Miller. We affirm.

The contest suit filed by Miller centers on precinct # 5 in Union County. In this precinct, 339 votes were cast. A total of 150 votes were cast for the office of circuit judge. Wathen received 105 votes; Miller received 45 votes.

The contest suit by Miller set out 206 names of Job Corps trainees, all of whom Miller alleged were illegal voters and that they cast their votes for Wathen. Further that because of the number of alleged illegal votes, the entire precinct should be excluded from the election.

▇ We do not reach the question of whether the Job Corps trainees were legal residents of Union County for the reason that *Watts v. Fugate,* Ky., 442 S.W.2d 569 (1969), and *Upton v. Knuckles,* Ky., 470 S.W.2d 822 (1971), are dispositive of the issues in this case. The proof discloses that twenty-one of the Job Corps trainees voted in the Republican primary. Of the remainder, the proof shows that only six remembered the candidate for whom they voted in the circuit judge's race. The other individuals either did not remember if they voted in the circuit judge's race at all or did not remember for whom they voted. The six trainees who remembered declined to answer for whom they voted on advice of counsel. These questions were certified to the trial court; later two of the certifications were withdrawn leaving four. The trial court determined that it was unnecessary to require answers since four votes would not affect the outcome of the election; thus, Miller failed to sustain the burden of proving that a sufficient number of the alleged illegal voters voted for Wathen so as to affect the outcome of the election. *Watts* disposes of Miller's argument that the vote of the entire precinct should be eliminated from the total vote. *Watts* stands for the proposition that the "20% rule" no longer applies to individual precincts but has reference to 20 percent of the total votes in the entire election in order to invalidate the election as opposed to changing the result of the election. As pointed out in *Upton,* this rule has no application in determining whether certain votes are in fact illegal, nor in cases where it can be determined for whom the illegal votes were cast (the situation here).

Miller cites the following language from *Watts* at page 571, in support of his argument that the alleged illegal votes should be deducted from the votes cast in the circuit judge election:

"If a contestant cannot prove for whom the illegal votes were cast, and they amount to less than 20% of the total, they are charged against him.[1] * * *.

* * * * * *

"[1] This rule, however, could only apply to the extent of the number of votes received by the contestant. Obviously, illegal votes in excess of the total number of votes received by the contestant in a precinct would have to be charged against the contestee."

This language applied to an illustration in *Watts* and presupposed a factual situation not applicable to this case. This illustration provides a test by which the contestant can show by mathematical computation that the illegal voters would change the results and show mathematically that the contestee could not be the winner.

▇ Here the number of alleged illegal votes comprised less than 20 percent of the

total votes cast in the election for circuit judge. It is not argued here that there was such fraud or impropriety in the conduct of the election in precinct # 5 in Union County as to warrant invalidating the election in that precinct. It is not disputed that there were 134 legal votes cast in the precinct. Miller failed to prove that a sufficient number of the alleged illegal voters voted for Wathen to change the results of the election.

The judgment is affirmed.

REED, C. J., and CLAYTON, JONES, LUKOWSKY, STERNBERG and STEPHENSON, JJ., sitting.

All concur.

PALMORE, J., not sitting,